**STATE of Missouri, Respondent,**

v.

**Larry JOHNSON, Appellant.**

No. 68249.

Supreme Court of Missouri,
En Banc.

Dec. 16, 1986.

Rehearing Denied Jan. 13, 1987.

Holly Simons, John Putzel, Office of Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Ted Bruce, Asst. Atty. Gen., Thomas Carter II, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Defendant, a prior offender, was convicted by a jury on four counts: Count I, forcible rape, § 566.030, RSMo Cum.Supp. 1984; Count II, forcible sodomy, § 566.060, RSMo Cum.Supp.1984; Count III, robbery in the first degree, § 569.020, RSMo 1978; Count IV, kidnapping, § 565.110, RSMo 1978. He was sentenced as follows: Count I, life imprisonment; Count II, fifteen years imprisonment, to run consecutively to the sentence in Count I; Count III, thirty years imprisonment, to run concurrently with the sentences in Counts I and II; Count IV, fifteen years imprisonment, to run consecutively to the sentences in Counts I, II and III. Following affirmance by the Court of Appeals, Eastern District, we granted transfer and now determine the cause as though on original appeal. Mo. Const. art. V, § 10. Defendant's sole claim on appeal is that the trial court abused its discretion in overruling defendant's challenge for cause of venirewoman Delahanty during voir dire, thus forcing defendant to use a peremptory strike to remove her.

The sufficiency of the evidence is not challenged, accordingly a brief recital of facts supportive of the verdicts will suffice. At approximately 12:30 a.m. on January 31, 1984, in the City of St. Louis, the victim had just entered her car when a man, his face covered by a sweat shirt hood and a scarf, forced his way into the car. The victim screamed but then quieted because she realized the man had a knife at her throat and ordered that she "[s]hut up,

bitch." The assailant started the car, drove to an alley, parked alongside a garage and asked the victim into which trash container she wanted her body put. He then told the victim to give him her money, and as ordered she gave him two dollars from her wallet. He restarted the car, drove to another alley and parked on an empty lot. When the victim unlocked her door, the assailant jabbed at her with his knife and said, "Go ahead and try. I'd love to kill you." In the parked car the victim was raped and forced to commit sodomy, and during the ordeal the victim observed the assailant's face at close range. Eventually, having stated she would not go to the police, the victim was allowed to leave with her car and returned to her apartment where she reported the crime first to a security guard and then the police. The next day she assisted in the preparation of a composite sketch of her assailant, examined a series of photographs and found one of a man whom she recognized as the assailant, and viewing a lineup identified defendant as her assailant. At trial the victim again identified defendant as the assailant.

Turning to defendant's sole claim on appeal, the pertinent portions of the voir dire examination of venirewoman Delahanty are as follows:

MR. CURRAN [for the defense]: Now, let me jump to another person for the things I want to ask. Mrs. Delahanty, the same question I just asked. You're a woman. And the charge here allegedly is rape. How is that going to influence you?

MR. MOSS [for the State]: Your honor, I object to the form of the question here. It's asking these jurors to justify for a particular belief or position whereas I think it can be asked will it influence them one way or the other, the fact that it happened to a woman?

THE COURT: Overruled.

MR. CURRAN: Mrs. Delahanty, should I repeat the question?

VENIRE[WOMAN] DELAHANTY: I would probably decide more with the woman in this situation.

MR. CURRAN: Can I ask you a couple of more questions?

VENIRE[WOMAN] DELAHANTY: Yes.

MR. CURRAN: Why would you feel this way here?

MR. MOSS: I object. It's asking her to justify a position that I think the law can.

THE COURT: Well, I don't see anything wrong in what he's doing. Overruled.

MR. CURRAN: Why would you feel that way?

VENIRE[WOMAN] DELAHANTY: I just—I don't think I could really be honest in this case. I'd be afraid to be on this case.

MR. CURRAN: Is that because of the nature of this charge?

VENIRE[WOMAN] DELAHANTY: Yes.

MR. CURRAN: So are you saying you would be unable to be fair and impartial on this?

VENIRE[WOMAN] DELAHANTY: I think I'd be better on a burglary charge. I'd be more fair to that.

MR. CURRAN: I'd like to make a motion at this time.

THE COURT: It's overruled at this time.

MR. CURRAN: Will you be able to view the evidence—Let me be specific. What I have to do is, I have to make a record and there's certain questions required by law that I have to ask you so we can determine whether or not you can be on the jury. The only reason I stopped short is I have to ask you some more questions. Are you able or would you be able to sit on this case knowing what the charges are as a fair and impartial?

VENIRE[WOMAN] DELAHANTY: Yes, I guess.

**64**

MR. CURRAN: All right. Now, you said you guess. Can you give me a yes or no?

VENIRE[WOMAN] DELAHANTY: I don't know with everything I've seen about the rapes on TV. I think I'd be more—I'd be more nervous about deciding who he was.

MR. CURRAN: All right. Now, do you think that would influence you, your ability to be fair in this case?

VENIRE[WOMAN] DELAHANTY: Yes.

MR. CURRAN: Do you think you would not be able to following the Court's instructions because of your feelings?

VENIRE[WOMAN] DELAHANTY: Yes.

MR. CURRAN: Do you think you would be inclined to lower the burden of proof for the State and make it less than a reasonable doubt?

VENIRE[WOMAN] DELAHANTY: I think so.

MR. CURRAN: So you won't be able to follow the Court's instructions?

VENIRE[WOMAN] DELAHANTY: Right.

THE COURT: Do you want to make any inquiry, Mr. Moss? Go ahead, Mr. Moss.

MR. MOSS: Miss Delahanty, I'm sure that there are other people on this jury panel that share your concern about the problem of rape. And it's a uniquely feminine problem at this point. Nobody likes it. I mean you won't find a [soul] in this room who's going to say it's fine. And you should have some strong feelings, but just as you should have some strong feelings about robberies and murders. The question really, at this point, is are your feelings so strong that when the judge tells you this is the law, you would say to yourself, well, I don't care. He may say this is the law, but this is what I'm going to do. Do you feel you're going to do that? My question is, are your feelings so strong that it pushes

you to disregard the law as the judge tells you?

VENIRE[WOMAN] DELAHANTY: No.

MR. MOSS: The other thing is, are your feelings so strong that if a witness got up there and you listened to what he or she said and you said to yourself, that doesn't make sense. That person is off the wall and is lying. Are your feelings such about rape that you would believe that witness in any way? In other words, find the fact that what you didn't believe to be a fact?

MR. CURRAN: I'll object to that question. That misstates the Court's instructions.

THE COURT: She can go ahead and answer.

MR. MOSS: See what I'm saying is are your feelings so strong that it causes you to believe a witness you wouldn't otherwise believe?

VENIRE[WOMAN] DELAHANTY: No.

MR. MOSS: So that's the thing we can all have strong emotions about something, the question is, do the emotions push us to the point where we say, "Okay, I don't care. This is what I'm going to do here regardless of the law," regardless of what the law tells you? Do you think you could follow what he tells you if the law here and not insert your own feelings about the law?

VENIRE[WOMAN] DELAHANTY: Just keep the facts, yes.

MR. MOSS: Right. You got to decide the facts here. That's the important thing.

THE COURT: Go ahead, Mr. Curran. Do you want to inquire further?

MR. CURRAN: Yes, Judge, just briefly. I think you understand why we're going to spend a little more time with you. After hearing what you have had to say and after what Mr. Moss has had to say, it's a very simple question. Can you follow the law and let your personal feelings aside from following the law? Frankly, to me, it seems to me that your

personal feelings are going to override the law. Mr. Moss says they aren't. I'll give you one last opportunity and then I'll leave you alone. Can you set aside your personal feelings and following the law in this case or not?

VENIRE[WOMAN] DELAHANTY: Yes.

MR. CURRAN: I'll leave you alone. Judge, I still wish to renew my motion to strike because of the nature of the answer.

THE COURT: Overruled.

Later during voir dire, the trial court stated:

Defense has made a motion to strike Miss Delahanty for cause and I overruled the motion. It's the Court's opinion after listening to her responses to the questions and hearing her demeanor, that even though she did at one time say she couldn't follow the Court's instructions, and then subsequently, by questioning by Mr. Moss, she said she could follow them and though at times, said she was afraid to be on the case because she would side with the woman, I think throughout all of this, it is my opinion that she can be a fair and impartial juror.

 "An accused must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges; denial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireperson constitutes reversible error." *State v. Hopkins,* 687 S.W.2d 188, 190 (Mo. banc 1985); *see also State v. Holland,* 719 S.W.2d 453, 454 (Mo. banc 1986); *State v. Stewart,* 692 S.W.2d 295, 298 (Mo. banc 1985): *State v. Draper,* 675 S.W.2d 863, 865 (Mo. banc 1984). However, we are mindful of the trial court's wide discretion in determining the qualifications of a prospective juror and its ruling will be disturbed on appeal only when clearly against the evidence and it constitutes an abuse of discretion. *Holland,* at 453–54. Each case must be judged on its facts and the relevant voir dire must be considered in its entirety. *Id.* Absence of an independent examination by the trial court justifies a more searching review by an appellate court of the challenged juror's qualifications. *State v. Ealy,* 624 S.W.2d 490, 493 (Mo.App.1981).

In the present case, although venirewoman Delahanty initially expressed reservations about her impartiality and her ability to apply the proper burden of proof, a careful consideration of the entire voir dire examination reveals that she demonstrated an ability to be fair and to follow the law and instruction of the court. Upon examination by the prosecutor, venirewoman Delahanty stated that she would not disregard the law, that her feelings were not so strong that she would believe a witness whom she otherwise would not believe, and that she would "[j]ust keep [to] the facts." Finally, she affirmatively answered defense counsel's question whether she could set aside her personal feelings and follow the law.

The present case is distinguishable from prior cases cited by defendant, including *Hopkins,* 687 S.W.2d 188, and *State v. Land,* 478 S.W.2d 290 (Mo.1972), wherein we reversed due to erroneous overrulings of challenges for cause. In *Hopkins,* unlike here, the challenged venireperson never unequivocally stated that he could set aside his personal feelings, decide the case on its facts, and follow the court's instructions. Similarly in *Land,* the trial court overruled defendant's challenge for cause even though it found the challenged venireperson might subconsciously "lean a little toward the State."

 Though a risk of reversal existed in permitting venirewoman Delahanty to remain on the panel, considering the entire voir dire examination, and venirewoman Delahanty's unequivocal assurances that she could set her personal feelings aside, would not on account of her feelings believe a witness whom she otherwise would not believe, would keep to the facts, and would follow the law, we cannot conclude that the trial court abused its discretion in overruling defendant's challenge for cause.

Judgment affirmed.

BILLINGS and ROBERTSON, JJ., concur.

DONNELLY, J., concurs in separate opinion filed.

BLACKMAR, J., dissents in separate opinion filed and concurs in separate dissenting opinion of WELLIVER, J.

WELLIVER, J., dissents in separate opinion filed and concurs in separate dissenting opinion of BLACKMAR, J.

HIGGINS, C.J., dissents and concurs in separate dissenting opinion of BLACKMAR, J.

DONNELLY, Judge, concurring.

For me, the teaching of *Strauder v. West Virginia,* 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880), is that the use of peremptory challenges should be eliminated from the criminal justice system. *See Batson v. Kentucky,* 476 U.S. ——, ——, 106 S.Ct. 1712, 1726–29, 90 L.Ed.2d 69, 91–95 (1986) (Marshall, J., concurring); Note, *The Case for Abolishing Peremptory Challenges in Criminal Trials,* 21 Harv.C.R.—C.L. L.Rev. 227 (1986); *State v. Lockett* (Mo. banc 1986) (No. 68186, decided December 16, 1986).

If this were done, challenges for cause would be sustained upon the slightest indication of prejudice.

I respectfully suggest that the General Assembly consider repealing § 546.180, RSMo 1978.

I concur.

BLACKMAR, Judge, dissenting.

I believe that the challenge of venirewoman Delahanty for cause should have been sustained in accordance with the teaching of *State v. Hopkins,* 687 S.W.2d 188 (Mo. banc 1985).[1] *Hopkins* was followed in *State v. Holland,* 719 S.W.2d 453 (Mo. banc 1986). The principal opinion departs from those holdings and sends the wrong signal to trial judges. It quotes two pages of voir dire examination in which the juror expressed doubt that she could be fair to the defendant. Her answers were such as to compel the defendant to expend a valuable peremptory challenge, without regard to rehabilitation. One purpose of voir dire, of course, is to obtain information which is helpful in exercising peremptory challenges, but we have repeatedly held that a defendant is entitled to a full panel of unbiased jurors from which to make his strikes.

The attempted rehabilitation consisted of three prolix leading questions by the prosecutor, one containing more than 100 words and another interrupted by colloquy. The answers hardly responded at all to the juror's indication of prejudice as shown by her initial answers. The prosecutor was apparently anxious to retain a juror who seemed sympathetic to his cause.

When jurors give answers strongly indicative of bias, they should be excused. Pages of grilling cannot eliminate the initial demonstration such as this record shows. It is important that the trial have the appearance of fairness to the defendant and to those who are concerned for him. This trial does not have that appearance.

Just as Judge Welliver says, I wish the trial judge had not put us in our present position. The indication of prejudice is so strong that I am unwilling to defer to his decision. I would reverse and remand for a new trial.

I do not agree with the suggestion by Judge Donnelly, quoting Justice Marshall, that peremptory challenges should be eliminated from the criminal justice system. I have not tried a great many criminal cases on behalf of defendants but, in those that I did try, I felt that peremptory challenges were invaluable. I believe that experienced criminal practitioners agree. *Batson v. Kentucky,* 476 U.S. ——, ——, 106 S.Ct. 1712, 1726–29, 90 L.Ed.2d 69, 91–95 (1986), certainly makes things more difficult for the prosecution and the court, but I do not believe that the abolition of the peremptory challenge is an appropriate solution.

---

**1.** This case was tried before our *Hopkins* opinion was handed down.

WELLIVER, Judge, dissenting.

I respectfully dissent and concur in the dissenting opinion of Blackmar, Judge.

I keep wondering why able trial judges continue to place us in the position of feeling an obligation under our cases to defer to their decision as to which time the venireperson is telling the truth, when they could so easily take all of us off the hook and remove even the slightest suspicion of unfair trial by simply calling another juror from the jury pool.