STATE of Missouri, Respondent,

v.

Leonard G. BOWLING, Appellant.

No. 14685.

Missouri Court of Appeals,
Southern District,
Division One.

June 1, 1987.

Motion for Rehearing or Transfer
to Supreme Court Denied
June 22, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Clarence E. Godfrey, Clayton, for appellant.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Appellant, tried as a prior offender, § 558.016.2, RSMo Cum.Supp.1984, and as a persistent offender, § 558.016.3, RSMo Cum.Supp.1984, was found guilty by a jury of robbery in the first degree, § 569.020, RSMo 1978, and armed criminal action, § 571.015, RSMo 1978. The trial court sentenced appellant to 25 years' imprisonment for each crime, ordering that the sentences run consecutively.

Appellant briefs nine points. As the sufficiency of the evidence to support the verdicts is unassailed, we synopsize only such evidence as is necessary to consider appellant's fourth assignment of error, which is dispositive of the appeal.

The evidence and all inferences reasonably to be drawn therefrom, considered in the light most favorable to the verdicts, with all contrary evidence and inferences disregarded, *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald*, 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985), established that on the afternoon of February 23, 1985, appellant entered the St. James Prescription Shop, and remained there 30 to 45 minutes, conversing intermittently with an employee, Emmis Feeler, and with Peggy Caligiuri, the wife of Louis A. Caligiuri, a pharmacist and manager of the store.

Appellant then departed, but returned 15 to 20 minutes later, and watched as customers entered and had prescriptions filled. When all customers were gone, and Mr. and Mrs. Caligiuri were behind the counter, appellant walked through a gate into that area, and pointed a gun at the Caligiuris. At that time, Emmis Feeler was working at a desk "behind the drug area." Appellant ordered Mr. Caligiuri to call Ms. Feeler, and Caligiuri complied.

When Ms. Feeler arrived, appellant pointed the gun at her, motioned toward a safe where narcotics were kept, and said, "Clean out your safe." Ms. Feeler knelt by the safe, and appellant tossed her a pillowcase, saying "Fill it up." As Ms. Feeler was putting drugs in the pillowcase, appellant ordered her to hurry.

After some 3,000 pills and other forms of drugs had been placed in the pillowcase, appellant stated, "That's enough," and seized the pillowcase. He then told the Caligiuris and Ms. Feeler to stay where they were until he left. Appellant then fled just as a customer, Karen Pompe, was entering the store.

Louis Caligiuri testified that the cost of the drugs stolen was $590.61, and that they were worth $60,000 to $70,000 "on the street."

Before addressing the dispositive issue, we must resolve a threshold question. Appellant's first point avers:

"The court erred in denying [appellant's] joint application for change of venue and change of judge and in assigning the case to the associate circuit judge in that a defendant is permitted one change of venue as a matter of right under Supreme Court Rule 32.03 and, upon joint application for changes of venue and judge in a two-judge circuit, Supreme Court 32.08(c)(3) requires the assignment of the cause to the other circuit judge."

Were we to find this point meritorious, reversal would be ordained, and we would not reach any other assignment of error. The point arises from the following facts.

This prosecution began by indictment in Phelps County, one of the four counties that constitute Judicial Circuit 25. § 478.-137, RSMo 1978. There are two circuit judges in Judicial Circuit 25; they sit in divisions numbered one and two. § 478.-700.1, RSMo 1978.

The indictment was filed in Division Two. Honorable Weldon W. Moore is the judge of Division Two, and at all times pertinent herein was the presiding judge of Judicial Circuit 25.[1] Appellant was arraigned May 9, 1985, before Judge Moore, and entered pleas of not guilty to both charges. On May 15, 1985, appellant filed a document styled, "Joint Application for Change of Venue and Change of Judge," which stated:

"Comes now defendant, by counsel, pursuant to Rules 32.03 and 32.08, and hereby makes application for change of venue from Phelps County, Missouri, where venue now lies, to Texas County, Missouri, and for a change of Judge from Honorable Weldon W. Moore, Division II, to Honorable Douglas Long, Division I, of the 25th Judicial Circuit.... In support of this application, defendant states:

1. This application has been·filed not later than 30 days after arraignment.

2. Phelps County, Missouri is a county of seventy-five thousand or fewer inhabitants.

WHEREFORE, the Court is requested to grant defendant a change of venue and change of Judge."

At the foot of the motion, the following appeared in handwriting: "James L. Elliott, Jr. (lm)." Beneath the handwriting appeared these typewritten words: "James L. Elliott, Jr., Assistant Public Defender."

On May 17, 1985, Judge Moore entered an order stating, in pertinent part: "... the Court denies the request of [appellant] for a change of judge and change of venue for the reason that the application does not comply with the rules of criminal procedure applicable thereto." That same day, Judge Moore entered an order assigning this case to Honorable Robert M. Becker, an associate circuit judge.

Nearly five months later, after Judge Becker had heard and ruled on sundry pretrial motions, appellant filed a document styled, "Motion for Rehearing on Denial of Joint Application for Change of Venue and Change of Judge," which stated, in pertinent part:

"... Honorable Weldon W. Moore, Circuit Judge of Division II, denied the joint application for the reason that the application 'does not comply with the Rules of Criminal Procedure applicable thereto'.

... Counsel for defendant believes that the reason why the joint application was denied was because of the fact that counsel's name, as it appears on the joint application, was written by the secretary. Counsel would show that the secretary who executed counsel's name on the joint application was authorized to do so.

... there is insufficient reason for denying defendant's joint application for change of venue and change of judge, that said motion should have been sustained, and the matter should have been assigned to either the other circuit judge in the 25th Judicial Circuit, or to the

---

1. Mo. Const. art. V, § 15.3 (1945, amended 1976, effective January 2, 1979) provides, in pertinent part: "The circuit and associate circuit judges in each circuit shall select ... a circuit judge from their number to serve as presiding judge. The presiding judge shall have general administrative authority over the court and its divisions."

Supreme Court of Missouri for assignment.

... Associate Circuit Judge R.M. Becker, who was assigned the case ... lacks jurisdiction to preside over this trial.

WHEREFORE, ... defendant requests that this cause be remanded to the Circuit Judge of Division II, the Honorable Weldon W. Moore, for rehearing, and that upon rehearing, this matter be properly assigned pursuant to Rules 32.-07 and 32.08...."

Appellant's brief states that his motion for rehearing was denied, and in support of that averment appellant's brief refers us to a docket entry of "12/30/85." We have scrutinized the copy of the docket sheet in the legal file, but have found no entry verifying appellant's assertion. However, the State, in its brief, says that the motion was denied by Judge Becker on December 30, 1985.

■ Where a statement of fact is asserted in one party's brief, and conceded to be true in the adversary's brief, we may consider it as though it appeared in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *Hammack v. White*, 464 S.W.2d 520, 522[4] (Mo.App.1971). We therefore proceed on the assumption that Judge Becker indeed denied the motion for rehearing prior to trial.[2]

Rule 32.08 [3] states, in pertinent part:

"(a) A defendant who desires both a change of venue and a change of judge must join both requests in a single application.

(b) A copy of the application and notice of the time when it will be presented to the court shall be served on all parties.

(c) Upon presentation of a timely application for both a change of judge and a change of venue the judge shall promptly sustain the application for change of judge, and:

...."

(3) If the case is being heard by a circuit judge in the circuit having two circuit judges, the judge shall transfer the case to the other circuit judge or shall request this Court to transfer a judge...."

Rule 32.03 states, in pertinent part:

"(a) A change of venue shall be ordered in any criminal proceeding pending in a county having seventy-five thousand or fewer inhabitants upon the filing of a written application therefor by the defendant. In felony cases the application must be filed not later than thirty days after arraignment of the defendant.... The defendant need not allege or prove any reason for change. The application ... shall be signed by the defendant or his attorney."

Appellant, relying on the Rules set forth above, and citing *State ex rel. Helms v. Moore*, 694 S.W.2d 502 (Mo.App.1985), insists that "Judge Moore exceeded his jurisdiction in denying the change and ordering the case to be heard by Judge Becker."

In *Helms*, this Court held that upon presentation of a timely application for both a change of judge and a change of venue in a criminal case being heard by a circuit judge in Judicial Circuit 25, such judge was required by Rule 32.08(c)(3) to either transfer the case to the other circuit judge or request the Supreme Court of Missouri to transfer a judge to hear the case. *Id.* at 503–04[1]. Judge Moore, as we have seen, did neither in the instant case.

Furthermore, Judge Moore denied appellant's request for a change of venue before Judge Moore assigned the case to Judge Becker. Appellant, asserting that Phelps County has fewer than 75,000 inhabitants, insists he was entitled to a change of venue as a matter of right under Rule 32.03(a). We take judicial notice that, according to the census of 1980, Phelps County had a population of 33,633. Official Manual, State of Missouri, 1985–1986, p. 1397.

---

**2.** The cause was tried December 30, 1985; that trial ended in a mistrial when the jury failed to reach a verdict. The cause was tried again January 31, 1986; that trial resulted in the judgment from which this appeal is taken.

**3.** Rule references are to Missouri Rules of Criminal Procedure (16th ed. 1985).

*State v. Odom,* 369 S.W.2d 173, 179[1] (Mo. banc 1963), *cert. denied,* 375 U.S. 993, 84 S.Ct. 634, 11 L.Ed.2d 479 (1964).

It thus appears, on cursory examination, that two judicial errors were made regarding appellant's joint application for change of venue and change of judge. It will be recalled, however, that Judge Moore denied the application on the ground that it did not "comply with the rules of criminal procedure applicable thereto." Consequently, our inquiry is whether the application suffered a fatal procedural flaw.

Judge Moore's order of May 17, 1985, did not specify wherein the application was deficient. Appellant, in his motion for rehearing before Judge Becker, surmised that Judge Moore's ruling was based on the fact that Assistant Public Defender Elliott's name had been written by a secretary, not by Elliott. Appellant, in his brief, cites authority for the proposition that a valid signature may be made for a person by the hand of another who acts at the former's direction.

While an exploration of that area of the law might prove intriguing, it is unnecessary in this case, as Judge Moore's ruling is sustainable for a procedural reason unrelated to the signature issue.

*In State ex rel. Jackson v. Thompson,* 661 S.W.2d 677 (Mo.App.1983), an accused in a criminal case timely filed an application for change of venue and change of judge. The trial court denied the application on the ground that it was unaccompanied by a notice of the time when it would be presented to the court. The accused thereupon sought a writ of prohibition to bar the trial court from proceeding with the case.

The Court of Appeals, noting that Rule 32.03 (application for change of venue), Rule 32.07 (application for change of judge), and Rule 32.08 (joint application for change of venue and change of judge), each required that the application be accompanied by notice of the time when it would be presented to the trial court, held that the accused's application was not in proper form, as it was not accompanied by a reasonable notice of the time when the accused would present it to the trial court. *Id.* at 679[1]. That being so, the trial court was not compelled to sustain the application. *Id.*

■ Appellant's joint application for change of venue and change of judge in the instant case suffers the same infirmity as the application in *Jackson.* Appellant's application was not accompanied by a notice of the time when it would be presented to Judge Moore. Accordingly, on the basis of *Jackson,* we hold that Judge Moore did not err on May 17, 1985, when he denied appellant's application for change of judge and change of venue. It follows that Judge Becker did not err when he denied appellant's motion for rehearing several months later. Appellant's first point is denied.[4]

We now turn to appellant's fourth point, which is dispositive of this appeal. That point states:

"The court erred in failing to excuse for cause venireperson [sic] Mary Sue Barger in that she stated that she would give more consideration to the testimony of a police officer, she had two close relatives who had been victims of crimes similar to this offense, and she expressed concern about her employment which brought her into contact with the owners of the prescription shop which was robbed and would cause her some problems, therefore indicating she would not be impartial, causing [appellant] to exercise one of his peremptory challenges to remove her, which challenge could have been used against other members of the panel who had expressed some partiality towards the police or victims."

The transcript shows that during voir dire, the following occurred:

"[Prosecutor:] The Judge told you that this case involves a robbery that occurred in St. James on February 23,

---

**4.** As we understand appellant's first point, he does not—absent a valid application for change of venue and change of judge—question Judge Moore's authority, as presiding judge of Judicial Circuit 25, to assign the case to Judge Becker. Accordingly, we do not address that subject in this opinion.

1985. St. James Prescription Shop. Have any of you heard anything about that robbery or read about it or recall talking to anyone about it?

. . . .

MS. BARGER: Mary Sue Barger. I've heard about the case—I mean the incident when it happened.

[Prosecutor]: Did you hear about it at the time back in February of '85?

MS. BARGER: Yes, sir.

[Prosecutor]: Okay. How did you hear about it?

MS. BARGER: The party that owns the prescription shop is—(inaudible).

[Prosecutor]: Mr. Caligiuri?

MS. BARGER: Well—

[Prosecutor]: The James Clinic people?

MS. BARGER: James Clinic. Yes.

[Prosecutor]: Okay. Did they just tell you that the prescription shop had been robbed—

MS. BARGER: Yes, sir.

[Prosecutor]: —basically?

MS. BARGER: Yes.

[Prosecutor]: Did they tell you anything that would cause you to be prejudiced against Mr. Bowling or the State of Missouri in being able to listen to the evidence?

MS. BARGER: No, sir.

[Prosecutor]: Do you have any preconceived notions as to what happened on that day?

MS. BARGER: It's—I mean, it's, you know, been a year ago. I have no—can't remember what happened—

[Prosecutor]: Okay. Thank you, Ms. Barger.

MS. BARGER: Uh-huh. . . ."

Later during voir dire, this occurred:

"[Appellant's lawyer]: Anybody else that heard about the robbery at the prescription shop, that heard about it through someone other than the press? Yes, ma'am.

MS. BARGER: Mary Sue Barger. I heard it from a James relation.

[Appellant's lawyer]: That you're related to?

MS. BARGER: No. My job related is—I work with the doctors.

[Appellant's lawyer]: Oh, okay. You work for the doctors who own the James clinic?

MS. BARGER: Yes, sir.

[Appellant's lawyer]: Okay. And you've talked with them about it?

MS. BARGER: It was mentioned in my presence when it happened.

[Appellant's lawyer]: And this was right after it happened?

MS. BARGER: (Inaudible).

[Appellant's lawyer]: Is there anything about your employment—I know you probably as an employer—I mean, an employee of the James—

MS. BARGER: It's not as employee with the James Clinic, but my job is related to working with the doctors.

[Appellant's lawyer]: You are employed by the doctors?

MS. BARGER: I'm employed by the hospital, sir.

[Appellant's lawyer]: Oh, okay. All right. So you come in to contact with the doctors a lot, then?

MS. BARGER: Every day.

[Appellant's lawyer]: Are you friends with the doctors?

MS. BARGER: Well, with the job I do, you know, I consider ourselves friends, but not—just during, you know, with my job I, you know. I hate to say that I'm working with—(inaudible)—but, you know—

[Appellant's lawyer]: Well, what I'm trying to say is, are you—do you interact with them socially? Do you see them in—outside of work?

MS. BARGER: Like, there is some holidays that we, you know, we're invited to their homes, is all.

[Appellant's lawyer]: Okay. Well, is there anything about your friendship with the doctors that might prevent you from rendering an impartial verdict in this case?

MS. BARGER: I hope not.

[Appellant's lawyer]: Well, can you— You feel like you can listen to the evidence and apply the instructions of the

Court to the evidence and reach an impartial verdict in this case?

MS. BARGER: Yes, sir.

[Appellant's lawyer]: Is there—Do you have any qualification about that?

MS. BARGER: (Inaudible).

[Appellant's lawyer]: You definitely feel that way or is there some, maybe a little doubt in your mind?

MS. BARGER: I just, you know, I really can't pinpoint what it, you know, would be, but—

[Appellant's lawyer]: You think there might be something because of your friendship with the doctors that might interfere with—

MS. BARGER: With not, you know, hearing the evidence or anything like that, you know. So, I don't—

[Appellant's lawyer]: Well, okay. I'm not trying—I'm not trying to pick on you, or anything.

MS. BARGER: Well, that's okay.

[Appellant's lawyer]: But I'm just trying to figure out—

MS. BARGER: It's, you know, it's something that's annoying, you know, because—

[Appellant's lawyer]: In other words, correct me if I'm wrong, but you think that there's something, maybe it's subconscious, because of your friendship with the doctors that might interfere with your ability to act as an impartial juror?

MS. BARGER: Well, I feel, maybe after this is over with, you know, job-related might be pressured a little bit, you know.

[Appellant's lawyer]: Okay. So, there is some influence there that you feel might—

MS. BARGER: Yeah, I wouldn't—Yeah.

[Appellant's lawyer]: —influence you?

MS. BARGER: Might be.

[Appellant's lawyer]: Thank you, Ms. Barger.

MS. BARGER: Uh-huh."

Still later during voir dire, we find this:

"[Appellant's lawyer:] Is anybody related to someone who is a law enforcement agent? Yes, ma'am, Ms. Barger.

MS. BARGER: Mary Sue Barger. My niece just got on the police force here in Rolla.

[Appellant's lawyer]: Your who?

MS. BARGER: My niece.

[Appellant's lawyer]: Your niece?

MS. BARGER: Yes.

[Appellant's lawyer]: How long has she been employed?

MS. BARGER: I think it might be going on two weeks now.

[Appellant's lawyer]: Because you have a niece who is employed as a police officer, do you feel like you are more knowledgeable than most people with the dealings of the police force—

MS. BARGER: No.

[Appellant's lawyer]: —with what they have to do from day to day?

MS. BARGER: No. I hardly get to see her. No, I don't.

[Appellant's lawyer]: Okay. Because you have a niece that's on the police department here, do you feel like you would give more consideration to the testimony of a police officer than you would to some other person?

MS. BARGER: I think I would consider it.

[Appellant's lawyer]: You think that because a person is a police officer that that person would be entitled to more consideration from you, than, let's say, just a lay person who testified?

MS. BARGER: No, I think that when a person is under oath I just consider it personally and, you know, individually.

[Appellant's lawyer]: Okay. Would you automatically assume that a policeman was telling the truth, or a police person?

MS. BARGER: If he's under oath, I hope he's telling the truth.

[Appellant's lawyer]: Okay. Then you would probably give more consideration to the testimony of a police officer than you would to someone else, all things considered, everything being equal?

MS. BARGER: Things considered, yes. I mean, equally, things considered.

[Appellant's lawyer]: You would give more consideration, you think, to a police officer?

MS. BARGER: Well, I would consider—anybody under oath, you know, consideration.

[Appellant's lawyer]: Yes, ma'am, but what I'm trying—What I'm trying to figure out is, do you think you would tend to believe a police officer because they were a police officer?

MS. BARGER: It would have to be the circumstances.

[Appellant's lawyer]: Okay. All right. But just starting off as we are now and nobody has taken the witness stand, do you feel that if you had a police officer and you have to say—I use the term 'ordinary person,' civilian type person, lay person, someone who is not a police officer—

MS. BARGER: Uh-huh.

[Appellant's lawyer]: —would you automatically, in your own mind, give more consideration to the testimony of the police officer than you would the other person?

MS. BARGER: Due to past experience, probably not.

[Appellant's lawyer]: Probably no?

MS. BARGER: Either—

[Appellant's lawyer]: But you think you might?

MS. BARGER: I just—I really don't know, really.

[Appellant's lawyer]: You don't know?

MS. BARGER: No, just, you know—

[Appellant's lawyer]: Okay. Thank you, Ms. Barger.

MS. BARGER: Uh-huh."

Finally, during voir dire, we find this:

"[Appellant's lawyer:] Are any of you related to anybody who has ever been robbed? Yes, ma'am.

MS. BARGER: Mary Sue Barger. My husband was robbed at gun point. I don't remember what town it was, and it's been about like three years ago.

[Appellant's lawyer]: Okay. Was anybody arrested on this?

MS. BARGER: No, sir.

[Appellant's lawyer]: Okay. I take it he lost some personal property, money or something?

MS. BARGER: He lost money.

[Appellant's lawyer]: Was there anything aggravating? I mean, other than the fact that it was at gun point, was there anything aggravated about it—Was he hurt or injured in any way?

MS. BARGER: He wasn't hurt, but he was startled, you know.

[Appellant's lawyer]: Now, did you say someone had been arrested for that?

MS. BARGER: No.

[Appellant's lawyer]: Okay.

MS. BARGER: I don't—I don't even think he was at a place where he could fill out a report.

[Appellant's lawyer]: Okay.

MS. BARGER: Or he might have. You know, it's been several, like, three years ago. So—

[Appellant's lawyer]: Okay. Is there anything about the fact that your husband was held up that would cause you to be unable to reach a fair and impartial verdict in this case?

MS. BARGER: No, sir. And there was another incident where my brother was—his home was broken into and they were held at gun point and was taken—had to drive these two people from AWOL from Fort Leonard Wood across the state line.

[Appellant's lawyer]: Is there anything about that that might tend to either consciously or subconsciously affect you in your deliberations as a juror?

MS. BARGER: No, sir."

After voir dire was completed, appellant's lawyer moved the trial court to strike Ms. Barger for cause on the ground that she would give undue consideration to a police officer's testimony, and on the further ground that she stated she did not feel she could be impartial because there would be pressure at her job. The prosecutor did not object. Nonetheless, the trial court denied the motion. Appellant utilized one

of his peremptory challenges, § 546.180.-1(2), RSMo Cum.Supp.1984, to remove Ms. Barger from the jury panel.

An accused must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges; denial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireman constitutes reversible error. *State v. Johnson,* 722 S.W.2d 62, 65[1] (Mo. banc 1986); *State v. Holland,* 719 S.W.2d 453, 454 (Mo. banc 1986). A trial court, however, has wide discretion in determining the qualifications of a prospective juror, and its denial of an accused's challenge for cause will be disturbed on appeal only when it is clearly against the evidence and constitutes an abuse of discretion. *Johnson,* 722 S.W.2d at 65; *Holland,* 719 S.W.2d at 453. Each case must be judged on its facts, and the relevant voir dire must be considered in its entirety. *Johnson,* 722 S.W.2d at 65; *Holland,* 719 S.W.2d at 453.

While Ms. Barger's responses were sometimes vague and fragmentary, a careful examination of her answers, in the aggregate, reveals that she sensed her decision as a juror might be swayed by the possibility of job-related pressure after the trial. She never forswore that concern after expressing it. Additionally, while she asserted she "probably" would not give more consideration to the testimony of a police officer than that of any other witness, she admitted, "I just—I really don't know, really." After expressing that uncertainty, she never disavowed it.

In *State v. Draper,* 675 S.W.2d 863 (Mo. banc 1984), a member of the venire stated she might be more likely to believe a police officer, and that she did not believe she could accept the fact that it was possible for a police officer to testify untruthfully. The accused's challenge for cause was denied, and he used a peremptory challenge to remove the venire member. The Supreme Court of Missouri, in a 4–3 decision, reversed the conviction, the majority opinion stating that after the venire member indicated she would accord police testimony greater weight than that of other witnesses, no further questioning displayed an ability on her part to evaluate all testimony by the same standard. *Id.* at 865. The error was prejudicial, inasmuch as the State's evidence included the testimony of a police officer as to the accused's behavior, which indicated a consciousness of guilt of the crime,· and which contested the accused's alibi. *Id.* at 865–66.

In *State v. Hopkins,* 687 S.W.2d 188 (Mo. banc 1985), a prosecution for homicide and two counts of assault, a venireman disclosed that both of his sons had been police officers. One had been killed while executing a search warrant. The other thereafter moved to another state to work on a police department in a low crime area, at his family's insistence. Asked whether the evidence might bring up feelings of bitterness or anger about his son's death, the venireman answered that he could not tell, but that there was definitely a possibility. Asked whether he could return a verdict of not guilty if he felt that the accused had not been proven guilty beyond a reasonable doubt, the venireman replied, "I would hope to, yes." Asked whether he would be able to follow the court's instructions, the venireman answered, "I hope so." Later, however, the venireman repeated that there was a great possibility that the evidence would bring back memories of his son's death. The accused's challenge for cause was denied, and he used a peremptory challenge to remove the venireman. Reversing the conviction, the Supreme Court of Missouri unanimously held that judicial discretion required the challenge for cause to be sustained, and that failure to do so constituted reversible error. *Id.* at 191. The opinion emphasized that while the venireman indicated he wanted and hoped to be impartial, he spoke of lingering thoughts of his deceased son, and that not once did the venireman unequivocally state he could try the case impartially. *Id.*

In *Holland,* 719 S.W.2d 453, a venireman stated that if the accused did not testify, the venireman would wonder why, as the venireman would like to hear the accused's side of the story. Asked whether he would think that way even if the judge instructed

that the accused did not have to take the stand, the venireman replied he would not really know about the facts if the accused did not testify. The accused's challenge for cause was denied. The Supreme Court of Missouri, noting that the accused did not testify, reversed the conviction in a unanimous decision. The Court noted that neither the prosecutor nor the trial court made any attempt to rehabilitate the venireman or seek further information to clarify or explain his answers. *Id.* at 454–55.

In *Johnson,* 722 S.W.2d 62, one of the counts was rape; another was sodomy. A female member of the venire stated she "would probably decide more with the woman," that she did not think she could really be honest in the case, that she was afraid to be on the case, that what she had seen on television about rape would influence her, and that she thought she would be inclined to lower the burden of proof. Later, however, she said her feelings would not push her to disregard the law as the judge gave it, and that she could set aside her personal feelings and follow the law. The accused's challenge for cause was denied, and he used a peremptory challenge to remove her from the jury panel. The Supreme Court of Missouri, in a 4–3 decision, affirmed, the principal opinion stating that although a risk of reversal existed in denying the challenge, a careful consideration of the entire voir dire revealed that the prospective juror demonstrated an ability to be fair and to follow the law and instructions of the trial court. *Id.* at 65. In view of those assurances, the Supreme Court could not conclude that the trial court had abused its discretion in denying the challenge. *Id.* The three dissenters felt that the attempted rehabilitation of the venire member did not dispel the indication of prejudice shown by her initial answers. *Id.* at 66.

■ In the instant case, the fact that Ms. Barger's husband and her brother had been crime victims supplied no basis to strike her for cause, as she unequivocally testified that neither incident would impair her ability to reach a fair and impartial verdict.

Moreover, as we have seen, appellant did not ask the trial court to strike Ms. Barger because of those incidents.

■ A different situation exists, however, regarding Ms. Barger's uncertainty about whether she would give more consideration to the testimony of a police officer than to that of other individuals. Several police officers were listed on the information as prosecution witnesses. Although the prosecutor did not call any officer to testify, appellant had no way of foreseeing that at the time he was required to voice his challenges for cause and exercise his peremptory challenges. Consequently, the fact that no officer testified for the prosecution does not absolve the trial court's rejection of appellant's challenge of Ms. Barger.

More importantly, we cannot ignore Ms. Barger's admission that she was annoyed by a feeling that she might be influenced by the possibility of job-related pressure after the trial. A fair reading of her responses, it seems to us, reveals that she was apprehensive that if she were a member of a jury that acquitted appellant, she might thereafter feel uneasy in the presence of the doctors who owned the prescription shop. She considered them friends, she saw them daily at the hospital where she worked, and she also saw them occasionally at social events. After Ms. Barger expressed that concern, the prosecutor made no effort to ameliorate it by further questioning.

■ The thread we find running through *Draper, Hopkins, Holland,* and *Johnson* is that if a venireman initially expresses reservations about his ability to reach a fair and impartial verdict, but after reflection unequivocally states he can set aside his personal feelings and decide the case solely on the law and the evidence, the trial court can accept such assurance, and is not obliged to sustain a challenge of such venireman for cause.

That was the holding in *State v. Lingar,* 726 S.W.2d 728 (Mo. banc 1987), decided March 17, 1987. There, a venireman stated he felt that if a man is innocent, he should testify, and that if the accused did not

testify, it would be an admission of guilt. Later, however, the venireman was told that the accused had an absolute right not to testify, and the venireman was asked if he could put his personal view aside and follow the court's instructions. The venireman replied that he could. The venireman also gave assurance that if the accused chose not to testify, the venireman would not count that as evidence, and would have to follow the court's instructions. The trial court denied the accused's challenge for cause. The conviction was affirmed, the opinion stating that by reason of the venireman's unequivocal assurances that he could follow the court's instructions and would not consider failure to testify as evidence against the accused, and the trial court's first-hand observation of the venireman as those assurances were made, the trial court did not err in overruling the challenge. *Id.* at 734[6].

In the instant case, appellant was not identified as the culprit until several weeks after the robbery, when Peggy Caligiuri and Emmis Feeler recognized a photograph of him shown them by police. Neither Louis Caligiuri nor Karen Pompe was able to identify appellant by photograph; however, Louis Caligiuri, along with Peggy Caligiuri and Emmis Feeler, identified appellant as the robber at trial. Karen Pompe did not testify.

Appellant declined to testify, but he presented two witnesses who swore he was with them in St. Louis County at the time of the robbery. The jury, therefore, had to decide whether the in-court identifications were reliable, or whether appellant's witnesses were telling the truth.

Appellant, of course, realized that the verdict would hinge on the jury's resolution of that issue, thus his desire that Ms. Barger be removed from the panel because of her concern about being influenced by the possibility of job-related pressure after the trial is easily understood. Appellant's use of a peremptory challenge to remove Ms. Barger after his challenge for cause was denied confirms his disquietude about her serving as a juror.

Inasmuch as Ms. Barger's comments regarding the testimony of police officers and the possibility of job-related pressure if she served as a juror were never renounced or modified, we hold that the trial court prejudicially erred in denying appellant's motion to strike her for cause.

As the judgment must be reversed and the cause remanded for a new trial, we deem it appropriate to resolve one further issue. Appellant's second assignment of error states:

"The court erred in allowing the State to amend the information on the date of trial to charge [appellant] as a prior and persistent offender in that such action was retaliatory for [appellant's] insistence on having a trial after his first trial ended in mistrial because of a hung jury, and constituted prosecutorial vindictiveness."

As noted earlier,[5] appellant's first trial ended in a mistrial when the jury failed to reach a verdict. The information pending against appellant at the time of the first trial did not charge him as a prior or persistent offender.

Eleven days after the mistrial, the State was granted leave to file an amended information, and was allowed five days to do so. The State complied. The amended information—actually a second amended information—charged appellant as a prior offender and a persistent offender.

At the outset of the instant trial, appellant's lawyer moved to quash the new information, asserting it was filed "out of a motive of vengeance, or something, or retaliation for having to try this case twice." Appellant's lawyer then directed the trial court's attention to other criminal cases in Phelps County where the culprits had allegedly received attractive plea bargain offers for crimes comparable to those charged against appellant.

The prosecutor responded: "The decision to try and obtain a persistent offender's status is made after the last trial, which

5.  Footnote 2, *supra.*

resulted in a hung jury. And I think it is going to help the State's case, and I think it's my duty to do everything I can to help the State's case.... We are not singling this case out in any way, whatsoever, to treat it differently. We're simply trying to do the best job we can to get a conviction."

The subject of prosecutorial vindictiveness was extensively discussed by this Court in *State v. McMikle*, 673 S.W.2d 791, 797–98 (Mo.App.1984), and we need not repeat what was said there. It is sufficient for the disposition of appellant's argument to point out that after the first trial, at which the issue of guilt and the issue of punishment were both presumably submitted to the jury, § 557.036.2, RSMo Cum. Supp.1984, the prosecutor had a sound tactical reason for proceeding against appellant as a prior and persistent offender, i.e., the issue of guilt, alone, would be submitted to the jury, with the matter of punishment left to the trial court. By limiting the jury's role to deciding only the issue of guilt, the prosecutor could have reasonably believed the likelihood of a verdict favorable to the State would be enhanced, as the jurors would not be faced with the duty of assessing a prison sentence of at least 10 years if they found appellant guilty of the robbery, § 569.020, RSMo 1978; § 558.011.-1(1), RSMo Cum.Supp.1984, or a prison sentence of at least three years if they found appellant guilty of armed criminal action, § 571.015.1, RSMo 1978.

Furthermore, the range of punishment was not increased by proceeding against appellant as a prior and persistent offender. § 569.020, RSMo 1978; § 558.011.1(1), RSMo Cum.Supp.1984; § 558.016.6(1), RSMo Cum.Supp.1984; § 571.015.1, RSMo 1978; § 557.021.3(1)(a), RSMo 1978.

■ Finally, the doctrine of vindictive or retaliatory prosecution involves coercive tactics by a prosecutor to force an accused to forfeit a constitutional right, or, once that right is exercised, some retaliatory action by the prosecutor to punish the accused. *Chamberlain v. State*, 721 S.W.2d 139, 141[8] (Mo.App.1986). In the instant case, the record is bare of any evidence that the prosecutor charged appellant as a prior and persistent offender to force appellant to forfeit a constitutional right, or to punish appellant for exercising any constitutional right.

Appellant's claim of prosecutorial vindictiveness is without merit. The State, on retrial, is free to prove, if it can, that appellant is a prior offender or a persistent offender, or both. On the subject of proof, we observe that appellant's third point avers that the State failed to prove beyond a reasonable doubt that he was the same individual as the defendant named in the court records of the convictions on which the State relied, and that a computer printout of a "criminal history check" relied on by the State to establish that element was erroneously received in evidence.

We do not, of course, reach those issues in this opinion. We do, however, observe that at a pretrial bond reduction hearing on October 3, 1985, appellant testified and, on direct examination, admitted convictions that appear to be those alleged in the second amended information. Consequently, the issues raised in appellant's third point may not arise on retrial.

Appellant's five remaining assignments of error need not be considered, as we have determined that the denial of his challenge of Ms. Barger for cause constituted reversible error.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

GREENE, P.J., concurs in result, and files concurring opinion.

HOLSTEIN, J., concurs in majority opinion, and files concurring opinion.

GREENE, Judge, concurring.

I concur in result. I believe, as the majority opinion holds, that the trial court committed prejudicial error in failing to excuse venire member Mary Sue Barger for cause. I also believe, contrary to the holding of the majority opinion, that the predecessor trial judge committed prejudicial error in failing to sustain Bowling's

joint application for change of venue and change of judge.

The majority opinion concedes that Rule 32.08(c)(3),[1] mandated that the joint application be sustained, and the case be transferred to the other circuit judge of the circuit, or that the Supreme Court be requested to transfer a judge to hear the case. However, it seeks to avoid application of the rule on the ground that the application suffered from the procedural deficiency of not being accompanied by a notice of when the application would be presented to the court. The purpose of the notice requirement is to give the opposing party an opportunity to be heard, and to contest the form, timeliness and sufficiency of the motion. *Matter of Buford*, 577 S.W.2d 809, 827 (Mo. banc 1979). There is nothing in the record to indicate that the prosecuting attorney was not aware of the application being filed, or that he had any objection to it. In fact, the filed copy of the application indicates that a copy was served on the prosecutor on May 14, 1985. The application was not denied until May 17th. The state had ample time, if it chose, to contest the form, timeliness and sufficiency of the application. It did not do so. By not doing so, it waived the notice requirement, which was for the prosecutor's benefit, and not the trial judge's.

*State ex rel. Jackson v. Thompson*, 661 S.W.2d 677, 679 (Mo.App.1983), relied on by the majority for its position on this issue, is distinguishable on its facts, as in that case the state contested the application, and made a special appearance to contest its form and sufficiency, which certainly is not the case here.

The right to a fair and impartial trial before an unbiased judge and jury is the cornerstone of our judicial system. Applications for change of judge and change of venue should not be summarily disposed of on the nebulous grounds stated in the trial court's order.

HOLSTEIN, Judge, concurring.

I fully concur in the majority opinion. In view of Judge Greene's concurring opinion,

I believe some further explanation is necessary.

The State may waive the sufficiency of the form of the notice required by Rule 32.08 by failing to make a timely objection to the insufficient notice; however, I believe the State cannot be faulted for a lack of diligence in this case. The State had three days, at most, in which to react. As the ruling was favorable to the State, the State had no obligation to enter a "special appearance" to contest the notice. The holding in *State ex rel. Jackson v. Thompson*, 661 S.W.2d 677 (Mo.App.1983), should be limited to those cases in which a party makes a timely objection to the sufficiency of the notice by entering a special appearance for the purpose of making such objection, *id.* at 679. Implicit in the *Jackson* holding is that the State had a reasonable opportunity to object before the application was ruled on by the court. Here, the State had no such opportunity.

I also join in the majority holding that the trial court erred in failing to excuse venire person Mary Barger following her equivocal answers to defense counsel's questions. I would add that the problems created by uncertain answers could have been avoided if the trial court had exercised its duty to control voir dire. The trial court is possessed of broad discretion to control voir dire, and its rulings will be upheld on appeal in the absence of abuse of discretion. *State v. Bannister*, 680 S.W.2d 141, 145 (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). We have previously ruled that where a trial court is faced with equivocal and uncertain answers on voir dire, it has a duty to make an independent inquiry into the venireman's qualifications. *State v. Brown*, 669 S.W.2d 620, 623 (Mo.App.1984). Such inquiry by the court could resolve any uncertainty and assure both sides a fair and impartial jury that would judge the credibility of all witnesses by proper standards.

The trial judge who tried this case is no longer on the bench. Of necessity another

---

1. Missouri Rules of Court, V.A.M.R.

judge will hear the case. On remand, the presiding judge of the 25th Judicial Circuit should consider requesting the Supreme Court to assign a judge to hear the case. In addition, granting a change of venue would probably resolve the problems which gave rise to the equivocal answers by the prospective jurors.