STATE of Missouri,
Plaintiff–Respondent,

v.

C.L. CHILDRESS, Defendant–Appellant.

No. 52811.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 8, 1987.

Holly Simons, Mary C. McWilliams, Asst. Public Defenders, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

Defendant was found guilty of illegally possessing a Schedule I Controlled Substance in violation of section 196.020, RSMo. 1986. Defendant appeals on two points: (1) the trial court erred by refusing to sustain appellant's motion to strike for cause eight venirepersons; and (2) the trial court erred by overruling defendant's motions for acquittal because the state failed to prove that defendant knowingly and intentionally possessed the controlled substance. We affirm.

The state's witnesses testified as follows. On the afternoon of May 16, 1986, two plainclothes narcotics officers observed seven individuals on or near a vacant lot and building. Detective Burke approached a group of four individuals and engaged them in conversation. Detective Dougherty approached a second group of three individuals who then left the area. At this time, Detective Dougherty searched a cinderblock wall and found a plastic wrapping concealed in a hole. The detective manipulated the wrapping enough to determine that it contained a number of capsules, but left the items in their cache. He continued searching, then both detectives reentered their vehicle, drove away and established surveillance of the area from a spot approximately 250 feet away.

Detective Dougherty, observing through binoculars, saw the group of three men return to the lot. Defendant, a member of that group, removed the plastic wrapping from the wall and re-concealed it under an electrical outlet.

Approximately three minutes later, a pickup truck stopped at the curb in front of the lot. Defendant walked to the window of the truck, reached his hand into the interior, placed the same hand in his pocket, then returned to the spot where he had concealed the wrappings. Defendant "looked around" then "spent some time" with the object. He again returned to the truck and reached inside.

At this point, the officers returned to the lot. Detective Dougherty retrieved the plastic wrapping and found that it contained thirty-eight capsules enclosing a brown powder, which was later identified as heroin. The detective then arrested defendant.

Defendant alleges that the events described never happened. He stated that he was standing on the corner talking to two other men when the officers arrived at the lot. Detective Dougherty began searching the area, found the pills, and attempted to identify the pills' owner. When no one claimed them, the detective announced he would "give it to the one who was closest." Subsequently, the detectives arrested defendant.

From this recitation of the evidence, it is obvious that appellant's second point, challenging the sufficiency of the evidence, is without merit. Knowledge and intent to possess an illegal substance may be inferred from conduct and mannerisms. *State v. Franks,* 688 S.W.2d 787, 790 (Mo. App.1985); *State v. Dethrow,* 674 S.W.2d 546, 550 (Mo.App.1984). The evidence that defendant was observed moving the bag of capsules from one place of concealment to another is direct evidence of possession and circumstantial evidence of his knowledge of the character of the substance.

Defendant also charges error in the denial of his motion to strike eight venirepersons for cause.[1] During the voir dire

---

1. The record reflects a preliminary statement by defendant's attorney that she intended to challenge a large number of prospective jurors who had indicated a preference to have a defendant testify on his own behalf. Subsequently, she specifically challenged only three jurors for this reason. If the trial court had erred in denying the defendant's motion, the number of challenges would be immaterial.

examination, defendant's attorney addressed the following questions to the panel.

> Do any of you require that Mr. Childress prove his innocence to you? I hear no response.
>
> Do any of you require that Mr. Childress take the stand and say something to you during this case?
>
> Do you have to hear from Mr. Childress in order to reach a not guilty verdict in this case?

Several of the venirepersons responded affirmatively or, the record indicates, nodded affirmatively. At the conclusion of the interrogation by defendant's attorney, the trial judge advised the jury as to the constitutional rights of every defendant. Leave was then granted for the state's attorney to further question the panel. He meticulously went down the list of jurors who had responded to the defense attorney's questions. Each of these prospective jurors individually acknowledged that he or she understood and could accept the defendant's right not to testify. They unequivocably expressed the ability to draw no adverse inferences from defendant's failure to testify and the ability to reach a decision based solely on the evidence presented.

The recent proliferation of appeals in criminal cases asserting error in the denial of challenges for cause during jury selection has firmly established the scope of appellate review. "Each case must be judged on its facts and the relevant voir dire must be considered in its entirety." *State v. Johnson*, 722 S.W.2d 62, 65 (Mo. banc 1986). The trial court has broad discretion in determining the qualifications of a prospective juror and its decision should be disturbed on appeal only when it is so clearly against the weight of the evidence as to constitute an abuse of discretion. *Id.* In *Johnson*, the prospective juror's "unequivocal assurances" that she could set her personal feelings aside and follow the law led the court to conclude no abuse of discretion had occurred. *Id.* In *State v. Stewart*, 692 S.W.2d 295 (Mo. banc 1985), the absence of such "unequivocal assur-

ance" and the vacillation of the prospective juror in response to "tugs and pulls from respective counsel" necessitated reversal. *Id.* at 299. Our review of the entire voir dire examination leads us to the conclusion that the facts of this case are more akin to *Johnson* than to *Stewart*. After the trial court's explanation of of every defendant's rights and upon further questioning by the state's attorney, each of the prospective jurors in effect expressed his or her ability to reach a decision based upon the evidence adduced without drawing an adverse inference from the defendant's failure to testify. The reaction of the first prospective juror questioned after the trial court's explanation is illustrative. Asked "do you remember saying that you wanted to hear the defendant testify?" She responded, "Yes, I did, but what he [the trial judge] said made a lot more sense." Thereafter she and the other prospective jurors gave assurances that they would not hold the defendant's failure to testify against him. The record of the voir dire in this case is quite similar to that set forth in *State v. Williams*, 721 S.W.2d 102 (Mo.App.1986), where this court found no abuse of discretion in denying the challenge to a juror who, after being informed of a defendant's right not to testify, unequivocally stated she would follow the law.

The gist of defendant's contention in this case can be discerned from the argument in his brief.

> Appellant concedes that the trial court and prosecution made a good faith attempt to rehabilitate said jurors. However, appellant would point out that, where eight potential jurors expressed significant doubt as to their impartiality, one right after the other, and just as readily expressed their conviction that they could remain impartial, one right after the other, it is apparent that said jurors were either not being honest or were incapable of independent thought. Taken together, the totality of the responses of the challenged jurors reveals a tendency on their part to agree with every authoritative figure interrogating them. Under these circumstances the

trial court should have sustained the challenges for cause.

An analysis of this argument supports the rule that the determination of a juror's qualifications is primarily vested in the discretion of the trial court. Having observed the demeanor and attitude of the prospective jurors first hand, the trial court is in a more favorable position to evaluate conflicting responses than an appellate court reviewing a cold, printed record. Any moderately skilled advocate is amply capable of eliciting the desired response by effectively phrasing questions to an unwary, uninformed and usually uncomfortable prospective juror. Further, it is an accepted principle of group psychology that once a member of a group has espoused a position, others are inclined to follow. That a rephrasing of the question can obtain a contradictory response does not indicate dishonesty or a lack of sincerity. On the contrary, it is entirely appropriate that a prospective juror should have an opportunity to correct his immediate reaction to an unanticipated question, especially after he is furnished additional concepts for consideration. This principle underlies the rule that the absence of an independent examination by the trial court warrants a more searching review by an appellate court. *State v. Johnson*, 722 S.W.2d at 65. Here, the trial court's explanation of the defendant's constitutional rights provided a more informed foundation for the juror's responses to additional questions. The sincerity of what appears to be a change of position is best evaluated by the trial court. Our finding that there is no abuse of discretion under the facts of this case does not disparage the oft-repeated caveat that trial judges should exercise great caution in denying challenges.

The judgment is affirmed.

SATZ, C.J., and SIMEONE, Senior Judge, concur.