**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Leonard R. HOPKINS,**
**Defendant-Appellant.**

**No. 66298.**

Supreme Court of Missouri,
En Banc.

April 2, 1985.

Debra Buie Arnold, St. Louis, for defendant-appellant.

David C. Mason, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HIGGINS, Judge.

Leonard Hopkins, a persistent offender, was convicted by a jury of manslaughter, Count I, and first degree assault in Counts II and III after shooting three people, killing one and injuring the other two. The jury assessed his punishment at fifteen years, Count I; life imprisonment, Count II; and a concurrent fifteen-year term on Count III. After affirmance in the court of appeals, this Court transferred the case to examine whether the trial court abused its discretion by overruling defendant's challenge for cause of Venireman McKay during voir dire, thus forcing him to use a peremptory strike to remove the prospective juror. Reversed and remanded.

"In determining the qualifications of a prospective juror, the trial court has very wide discretion, and the court's ruling will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion." *State v. Treadway,* 558 S.W.2d 646, 649 (Mo. banc 1977), *cert. denied,* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978).

Both of Venireman McKay's sons had been on the St. Louis Police Department. One son was killed in the line of duty while executing a search warrant twelve years prior to defendant's trial. The other son moved to Michigan to work on a police department in a low-crime resort area at his family's insistence.

The following is from the voir dire examination of Venireman McKay:

MS. LEISENRING (defense counsel): Now, your son who was killed in the line of duty executing a search warrant?
VENIREMAN McKAY: Yeah, I guess so. All I know is that they busted into an apartment house on Waterman.
MS. LEISENRING: And you believe it was a drug raid.
VENIREMAN McKAY: That's what the paper said.
MS. LEISENRING: And it was a Shoot Out and your son was killed by one of the men?
VENIREMAN McKAY: Who was in the apartment, yes.
MS. LEISENRING: Okay. Was anybody else arrested and charged in connection with this incident?
VENIREMAN McKAY: Yes, everybody in the apartment was arrested.
MS. LEISENRING: Okay. Let me ask you this, were you satisfied with the way that matter was handled, the subsequent arrest of the other people that had been in the apartment?
VENIREMAN McKAY: I don't believe everybody else even got a sentence out of it.
MS. LEISENRING: How do you feel?
VENIREMAN McKAY: The only one that was hurt was the boy he killed.
MS. LEISENRING: How do you feel about that, sir?
VENIREMAN McKAY: I think somebody should have paid a little bit.

\*     \*     \*     \*     \*     \*

MS. LEISENRING: Do you think it's possible that if you were chosen as a juror in this case, which the charge is Homicide, Capital Murder, your son was killed, do you think it's possible that sitting here through a two or three day trial, being sequestered, having really nothing else on your mind, being cut off from your outside ties, that it's possible that it may bring up feelings of bitterness or lingering anger that you may have about your son's death?
VENIREMAN McKAY: I can't tell you what's going to happen.... It might,

might not. I don't know. I try to forget it really, but there are a lot of things I see on the T.V., in the paper, what have you, that brings it all back. Just recently, only last month was the anniversary, in February. Well, my wife and I both had a terrible time this past month, normally do.

\*     \*     \*     \*     \*     \*

MS. LEISENRING: As to whether or not you think there is a possibility that being chosen as a juror in this case and being, you know, sitting here in the box listening to all the evidence might jostle, arouse some of those feelings, the sadness, the sorrow, the anger that you experienced in relation to your son's death.

VENIREMAN McKAY: I would say definitely, sure, there is a possibility.

MS. LEISENRING: Okay. And do you think there's a possibility that then the end result is that it could affect your ability to render a fair and impartial verdict in this case?

VENIREMAN McKAY: It might. Like I said before, I'd try not to, but I don't know what the possibilities are.

\*     ˙     \*     \*     \*     \*     \*

MR. BAUR (prosecutor): Okay. If after listening to all the evidence you felt that the defendant had not been proven guilty beyond a reasonable doubt, would you be able to return a verdict of not guilty?

VENIREMAN McKAY: Like I said before, I would hope to, yes.

MR. BAUR: Okay. You would be able to follow the Court's Instructions?

VENIREMAN McKAY: I hope so.

\*     \*     \*     \*     \*     \*

THE COURT: Now, the questions asked by counsel for the defendant was properly trying to elicit from you whether at this point you are free of any prejudice against the defendant ... and ... you indicated there was a possibility it would revive some memories. But what I want to ask is even if it revived memories, could you base your verdict solely on the evidence and the Instructions.

VENIREMAN McKAY: I certainly would try.

THE COURT: All right.

VENIREMAN McKAY: I can't say what I'm going to do. I know what I want to do, but I can't tell you what the possibilities are going to be. Like the lawyer just asked me, when we get into the trial, will it bring back things like memories of what happened. Well, yeah, there's a great possibility that can happen. Right now I have nothing.

■ An accused must be afforded a full panel of qualified jurors before he is required to expend his peremptory challenges; denial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireperson constitutes reversible error. *State v. Thompson*, 541 S.W.2d 16 (Mo.App.1976); *State v. Lovell*, 506 S.W.2d 441 (Mo. banc 1974).

■ In determining when a challenge for cause should be sustained, each case must be judged on its facts. *State v. Harris*, 425 S.W.2d 148, 155 (Mo.1968). "Errors in the exclusion of potential jurors should always be made on the side of caution." *State v. Carter*, 544 S.W.2d 334, 338 (Mo. App.1976).

■ A relationship to a police officer alone is not a basis for challenging a juror for cause, *State v. Eaton*, 504 S.W.2d 12, 17 (Mo.1973); *State v. Boyd*, 643 S.W.2d 825, 829 (Mo.App.1982); a relationship to someone who has experienced a violent crime is not sufficient reason by itself to challenge a juror for cause. *State v. Brown*, 660 S.W.2d 694 (Mo. banc 1983); *State v. Smith*, 649 S.W.2d 417 (Mo. banc 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *State v. Underwood*, 642 S.W.2d 658 (Mo.App.1982). It is when these relationships combine with other factors to indicate a lack of impartiality that a challenge for cause must be sustained. *See State v. Land*, 478 S.W.2d 290 (Mo.1972); *State v. Holliman*, 529 S.W.2d 932 (Mo.App.1975).

Examination of the voir dire of Venireman McKay, reveals not only a relationship to policemen and a relationship to a victim of a violent crime, Capital Murder, but also a prospective juror of integrity—struggling with uncertainty as to his own ability to be impartial in this case where the defendant was charged with Capital Murder. He indicated he wanted and hoped to be impartial. At the same time, he spoke of lingering thoughts of his son, his feelings that "somebody should have paid a little bit," and that the anniversary of his son's death had been but one month prior to voir dire and was a particularly upsetting time.

Not once did Venireman McKay unequivocally state he could try the case impartially; at most, he said he would "try" to be impartial. In these circumstances, judicial discretion required the challenge for cause be sustained and Venireman McKay replaced by another from the pool of readily available jurors. Failure to do so constituted reversible error. *Lovell* at 444.

The judgment is reversed and the cause is remanded for a new trial.

RENDLEN, C.J., and WELLIVER, GUNN, BILLINGS and DONNELLY, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

BLACKMAR, Judge, concurring.

I concur, and write separately simply to express concern about the many cases presented to our Court and the Court of Appeals in which a juror indicates doubt about his or her ability to function impartially, and is nevertheless continued on the panel tendered to counsel for strikes. In the typical case the trial judge or the prosecutor will ask questions until the juror gives assurance of efforts of impartiality. The suspicion remains that the juror's initial reaction persists, and that the assurances are only what might be expected from interrogation by a high authority figure.

Trial judges should fully sustain challenges to jurors who indicate reservations about their impartiality. Replacement jurors are easily available in the metropolitan areas, and it should not be difficult to ensure adequate supply of jurors in other parts of the state.

I regret the necessity for reversal of a conviction of a persistent offender on serious charges, in which there seems to be no other substantial claim of error, but agree with the analysis in the principal opinion demonstrating that the challenged juror never gave an answer which was free from reservation.