STATE of Missouri,
Plaintiff-Respondent,

v.

Leon EDWARDS, Defendant-Appellant.

No. 52176.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 15, 1987.

Motion for Rehearing and/or Transfer
Denied Oct. 21, 1987.

Application to Transfer Denied
Dec. 15, 1987.

Michael Naccarato, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant Leon Edwards appeals from his convictions and sentences, after a jury trial, on charges of burglary second degree and property damage third degree.

The preserved issue of error, failing to sustain a challenge for cause of a venireperson, does not require a lengthy statement of facts. Defendant does not challenge the sufficiency of the evidence which includes eyewitness testimony by a police officer that defendant and two others committed the charged crimes on July 11, 1985.

An accused is entitled to a full panel of qualified jurors before he is required to expend his peremptory challenges. *State v. Hill,* 714 S.W.2d 687, 689 (Mo.App.1986). While a trial court's refusal to sustain a valid challenge for cause constitutes reversible error, it is clear that the trial court is accorded wide discretion in determining the qualifications of a venireperson. *State v. Stewart,* 692 S.W.2d 295, 298 (Mo. banc 1985). The ruling of the trial court will not be disturbed on appeal absent "a clear abuse of discretion and real probability of injury to the complaining party." *State v. Young,* 701 S.W.2d 429, 432 (Mo. banc 1985). In determining when a challenge for cause should be sustained each case must be judged on its facts. *State v. Hopkins,* 687 S.W.2d 188, 190 (Mo. banc 1985). "Trial judges should sustain challenges to jurors whose responses make questionable their impartiality. The time saved by not doing so is not worth the serious risk it involves to defendant's right to an impartial jury, which, if violated, inevitably results on having to try the case over again." *Stewart,* 692 S.W.2d at 299.

The following excerpts from the voir dire examination of Mrs. Leigh are the basis of defendant's claim:

DEFENSE COUNSEL: Okay. Mrs. Leigh, do you have a friend [or close acquaintance who is a police officer]?

VENIREPERSON LEIGH: Yes. My husband used to be a police officer.

\* \* \* \* \* \*

DEFENSE COUNSEL: Okay, and he has friends who are still on the police department?

VENIREPERSON LEIGH: Right.

DEFENSE COUNSEL: The reason I'm asking that question is that some of the witnesses who are going to testify for the State are police officers. That's always the case. All right? I want to know whether or not you would tend to believe them more simply because of the uniform they wear, or the occupation. You have the right to judge their performance, and you have the right to examine it; but I don't believe you have the right to say when a guy walks in the door in a police uniform, to say, "I'm going to believe what he says more because he's got that uniform." Can you tell me whether you would do that or not?

VERNIREPERSON LEIGH: I hope I wouldn't.

DEFENSE COUNSEL: You're giving me a weasel word again. Again, I'm asking things based on hypothetical. Would you feel more comfortable [sic] if you had to enter a verdict of not guilty where a police officer had said he had seen something or done something?

VENIREPERSON LEIGH: I'm afraid I would.

DEFENSE COUNSEL: Okay.

VENIREPERSON LEIGH: I'm kind of afraid I might tend to believe them.

DEFENSE COUNSEL: Okay. Your husband, he would give you the devil if he knew you did that, wouldn't he?

VENIREPERSON LEIGH: Uh-huh.

\* \* \* \* \* \*

THE COURT: Mrs. Leigh, would you step up to the bench, please?

PROSECUTOR: I don't want you to think we're picking on you. Some questions that you were asked yesterday about your relationship to police officers. And the fact that your husband was at one time a police office [sic]. You indicated at one time you wouldn't believe a police officer more than any other person? In this case, we want jurors who can evaluate witness [sic] on an equal basis. An the fact that somebody is a police officer would not automatically give them more credibility, make them more believable, just because they are police officers. The police officers that's going to testify here, the names that I've read, you don't know them?

VENIREPERSON LEIGH: No.

PROSECUTOR: Do you believe police officers can be mistaken sometimes?

VENIREPERSON LEIGH: Probably; yea.

PROSECUTOR: And police officers can lie?

VENIREPERSON LEIGH: I guess they could. I hope they don't.

PROSECUTOR: Well, we hope nobody lies under oath; but would you believe a police officer more readily than a priest?

VENIREPERSON LEIGH: No.

PROSECUTOR: A doctor?

VENIREPERSON LEIGH: No.

PROSECUTOR: And do you feel police officers, because of their training are better able to observe things; that's one of the reasons why you seem to give them more credibility?

VENIREPERSON LEIGH: I think so.

PROSECUTOR: What we're talking about is intrinsic honesty, or intrinsic credibility. Not the ability to observe; that's different than credibility. And the bottom line is, do you intrinsically, simply because a person is a police officer, would you believe that person more than any other person, average person, witness who would testify, not necessarily priest, or doctor, but anybody?

VENIREPERSON LEIGH: I would kind of—If I had doubt, you know, then I would kind of go to the police officer, if I wasn't sure that someone was telling the truth.

PROSECUTOR: That's all I have.

DEFENSE COUNSEL: I don't have anything further.

THE COURT: Mrs. Leigh, excuse me. The test you will be given, if you're a member of this jury, you will be given certain standards that you may use in judging the credibility of a witness—any witness. The test is, can you apply these standards to everyone, apply those same standards to a police officer as you would to the defendant if he chooses to testify, or anybody else that comes in here to testify, and not say, "Well, I'm going apply those standards to the lay witness. but I'm not going to apply them to the police officer, I'm just going to believe him because he happens to be a police officer?"

VENIREPERSON LEIGH: No.

THE COURT: He wears a blue suit.

VENIREPERSON LEIGH: No.

THE COURT: Can you apply that standard. You know, this doesn't mean that if you feel a police officer was close to the scene, or, you know, if he took notes or something, you couldn't take that into consideration; but the test is whether you could treat everybody the same, and determine their credibility based on the standards that I will give you, and not say, "Well, I'm going to apply different standards to policemen than I am to any other witness?"

VENIREPERSON LEIGH: I can give them all the same in that respect; yes.

\* \* \* \* \* \*

THE COURT: I think, of course, it's a matter of judgment. And based upon my opportunity to observe her, not only what she said, but how she said it, I'm convinced that Mrs. Leigh could apply the standards uniformally [sic] to all the witnesses. And, therefore, I'll overrule your motion to strike for cause.

In addition, the following voir dire examination was conducted:

PROSECUTOR: The defendant is charged with burglary, what we call the lead charge, burglary in the second degree. I want to ask, is there anybody here been the victim of a burglary, at your home, or your office, maybe your garage? We're talking about entering without permission with the intention of doing some kind of a crime inside. And I see a lot of hands. Let me go to the back row, first row in the jury box. That's the first person on the list that I have. And I'll go row by row. In that back row, I see Mrs. Gebken, is that your home?

\* \* \* \* \* \*

PROSECUTOR: Mrs. Leigh, or it Lee?

VENIREPERSON LEIGH: Leigh.

PROSECUTOR: Is that your home, or what?

VENIREPERSON LEIGH: Our home.

PROSECUTOR: How long ago?

VENIREPERSON LEIGH: Eight years.

PROSECUTOR: Just one time?

VENIREPERSON LEIGH: Yes.

PROSECUTOR: Property taken and never recovered?

VENIREPERSON LEIGH: Right.

PROSECUTOR: Was anybody caught?

VENIREPERSON LEIGH: No.

PROSECUTOR: Just as I asked Mrs. Gebken, do you think that would affect your ability to give the defendant a fair trial?

VENIREPERSON LEIGH: No, I don't think so.

\*    \*    \*    \*    \*    \*

VENIREPERSON LEIGH: Mrs.

MR. WHITNEY: You work at St. Mary's Health Center?

VENIREPERSON LEIGH: Yes.

MR. WHITNEY: What do you do there?

VENIREPERSON LEIGH: I'm a secretary in the lab.

MR. WHITNEY: About how long have you worked there?

VENIREPERSON LEIGH: Ten years.

MR. WHITNEY: I assume it was Mr. Barnhart's material that was taken in the burglaries, isn't that correct?

VENIREPERSON GEBKEN: Yes.

PROSECUTOR: You indicated that you had your home broken into seven years ago?

VENIREPERSON LEIGH: Yes.

PROSECUTOR: Did you have insurance for the property that was taken?

VENIREPERSON LEIGH: It wasn't enough, it was just a stereo that he took.

PROSECUTOR: Okay, I have in my notes here that when Mr. Randle asked you whether or not that incident would affect you as a juror in this case, you said, "I don't think so." We have got to ask you the hard questions. I can tell you that Mr. Edwards is charged with a burglary second degree. That's unlawfully entering and remaining in a building that belongs to someone else. I assume that's similar to what happened in your case.

VENIREPERSON LEIGH: Right.

MR. WHITNEY: I have to ask you whether or not you feel you could follow the instructions of the court, your reason, and your conscience in determining what verdict you should render in this case, or whether or not your experience, whatever it may be with your home getting broken into would affect you in some way or another? There are plenty of jurors, whatever experience they had probably wouldn't affect them.

VENIREPERSON LEIGH: I started to say, I don't think so, no.

MR. WHITNEY: You feel you could be fair to both sides?

VENIREPERSON LEIGH: I feel I could.

MR. WHITNEY: Okay. One thing. Being fair is asking and expecting of the State of Missouri to prove their case beyond a reasonable doubt. Okay. You'll have the judge read you a short instruction about what reasonable doubt means. And Mr. Randle and I could argue about that all day, and probably accept, that the bottom line is you have to be firmly convinced—those words used in the instuction—firmly convinced of the defendant's guilt before you sign the verdict of guilty. Do you feel you can do that?

VENIREPERSON LEIGH: Yes.

In the present case the trial court permitted venireperson Leigh to remain on the panel. A jury was needed to try a charge against defendant for a burglary. Eight years before the trial venireperson Leigh was the victim of a burglary at her home. Property was taken and never recovered. No one was caught. She was not insured. She did not *"think"* that would affect (her) ability to give the defendant a fair trial. This was not in itself disqualifying, but it may not be ignored when considering her expressed reservations. Venireperson Leigh admitted a tendency to believe a police officer, her concern for criticism if she did not, her discomfort on the issue, and her relationship to a former police officer. Her answers indicated that she *hoped* she would not believe a policeman more because he testified in uniform. She acknowledged that she would be less comfortable in voting a not guilty verdict, as opposed to a guilty verdict, if a police officer testified on facts indicating guilt. Most

importantly, regarding the matter of "questionable", she said she was *"afraid* I might tend to believe" police officers and that she expected criticism from her husband if she voted innocence where a police officer testified.

With this background the prosecutor undertook to rehabilitate Mrs. Leigh. He compared believability of police officers with a priest or a doctor. Neither of these categories were involved in the present case and no rehabilitation was demonstrated by her answers relating to a priest or a doctor. The prosecutor then focused on "intrinsic honesty, or intrinsic credibility." Mrs. Leigh was asked to utilize these terms in comparing her ability to weigh the testimony of a police officer and an average person. Her answer appears decisive. She said, "I would kind of—if I had doubt, you know, then *I would kind of go to the police officer,* if I wasn't sure that someone was telling the truth." This answer not only did not rehabilitate Mrs. Leigh it candidly confirmed the probability of an inability to be impartial. At the very minimum it made her ability to serve as an impartial juror questionable and that is the test. *Stewart,* 692 S.W.2d at 299.

Decision on the motion to strike for cause naturally rests with the trial judge. Recently, our Supreme Court has emphasized participation of the trial court in determining jury qualifications where there is some doubt. Reversible error is less likely if the trial court participates, providing the result is clear rehabilitation. In the present case the trial court informed Mrs. Leigh that at some time the jury would be given "certain standards" to be used in judging credibility of a witness. The standards were not described in the question. At most, the answer given, "No", indicates that Mrs. Leigh would not believe a police officer merely because he was a police officer. This answer does not overcome her fear that she would weigh opposing testimony of a police officer and a lay person in favor of a police officer. The court then specifically asked if she could apply "that standard." Obviously, that question could not be answered because the standard was never given. Mrs. Leigh subsequently said

she could give them all (presumably any and every witness) the same in that respect. But the question remains in what respect and according to what standard?

Apparently the trial court had reference to Instruction No. 1 based on MAI–CR 2d 2.01. That instruction informs the jury, after all evidence has been presented, that it must decide upon the believability of a witness and weigh the value of the evidence. It does not recite a standard for comparing witnesses. It provides, "[i]n determining the believability of a witness and the weight to be given to testimony of the witness you may take into consideration the witness' manner while testifying, the ability and opportunity of the witness to observe and remember any matter about which testimony is given, any interest, bias or prejudice the witness may have, the reasonableness of the witness' testimony considered in the light of all the evidence in the case, and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness." This portion of the jury instruction does not overcome a predisposition to believe a police officer when comparing his testimony with that of a non-police officer. It does not touch the qualifications of a venireperson who candidly informed the court that she would tend to believe a police officer and would be uncomfortable finding against the testimony of a police officer or thereby become the subject of criticism by her husband, a former police officer, if she did. Nor should it be forgotten that venireperson Leigh was the victim of an unsolved crime similar to that for which she was permitted to remain on the panel.

The tragedy in the present appeal is that the issue is one which occurs and reoccurs in numerous appeals and it can be prevented. In order to insure the integrity of conviction it would be in the best interest of the state and all citizens if challenges on these facts be sustained and the issue removed from a defendant's inventory of grounds for appeal. Affirmatively, it would be better if the suggestion of our Supreme Court in *State v. Stewart,* to re-

move questionable venirepersons was faithfully respected.

Not all challenges for cause involve the ability to impartially weigh testimony of witnesses. Some involve fixed opinions on issues. In *State v. Stewart,* 692 S.W.2d 295 (Mo. banc 1985) the issue was whether or not the defendant's failure to testify would suggest guilt. The venireperson held a view that in crimes against persons the defendant should testify if innocent. The Supreme Court reversed and remanded for a new trial.

In *State v. Young,* 701 S.W.2d 429 (Mo. banc 1985), *cert. denied,* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986) the court affirmed where the trial court struck venireman Harville who candidly admitted he did not like capital punishment and "probably couldn't" impose it on someone else. In so deciding, our Supreme Court applied the standard announced in *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985): "The standard is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

Some challenges involve a predisposition. Here an unequivocal promise to disregard the concern is required. In *State v. Larry Johnson,* 722 S.W.2d 62 (Mo. banc 1986) the court considered the challenge based on a venirewoman's tendency to be partial against a defendant in a rape case because she was a woman. Venirewoman Delahanty did not think she could really be honest in this case. The response related to whether or not the state would be held to the required burden of proof in the mind of Mrs. Delahanty. The court found that her assurances that she would not disregard the law and that her feelings were not so strong that she would believe a witness whom she otherwise would not believe and that she would just keep to the facts adequately overcame any question of partiality. The key to the holding in *State v. Johnson,* appears to be an affirmative statement in answer to defense counsel's question that "she could set aside her personal feelings and follow the law." The

court found this an unequivocal assurance she could set aside her personal feelings.

In *State v. Hopkins,* 687 S.W.2d 188 (Mo. banc 1985) the Supreme Court considered convictions on charges of manslaughter and first degree assault. It reversed and remanded for a new trial for error in failing to strike a venireman whose son was a police officer killed in the line of duty. The venireman revealed not only a relationship to a policeman, but also a relationship to a victim of a violent crime. He indicated that he wanted and hoped to be impartial. However, he reacted to his personal loss by the expression, "I think somebody should have paid a little bit." *Id.* The venireman did not once "unequivocally state he could try the case impartially." *Id.* at 191. The court said, "[i]n these circumstances, judicial discretion *required* the challenge for cause be sustained ..." (our emphasis) We pause to note the concurring opinion of Judge Blackmar which expresses the frustration shared by this court. He there said, "[t]rial judges should fully sustain challenges to jurors who indicate reservations about their impartiality. Replacement jurors are easily available in metropolitan areas, and it should not be difficult to ensure adequate supply of jurors in other parts of the state."

In *State v. Smith,* 649 S.W.2d 417 (Mo. banc 1983) the court affirmed a conviction where a challenge for cause was denied. Venireman Moss indicated that he might lean more towards a police officer's testimony. His brother was a police officer in Virginia. Moss expressed his feeling that police would not lie. However, he said, "I don't think the fact my brother is a police officer would itself really affect" him. *Id.* at 423. The court analyzed the questions and answers presented to venireman Moss and concluded that he indicated a possibility that his brother's occupation would affect his ability to fairly evaluate police testimony, but after reflection stated he didn't think his brother's position would affect his judgment. The court first observed that the credibility of police officers was not a significant issue in the case. The holding in *Smith,* therefore rests on an unequivocal assurance of impartiality in weighing the

testimony of police officers *and* the fact that the testimony of police officers was not critical to the evidence.

We reversed and remanded for a new trial in *State v. Willis*, 688 S.W.2d 38 (Mo. App.1985) because the trial court refused to strike a venireman who acknowledged that he would credit a police officer with the quality of a trained observer and give greater weight to his identification testimony for that reason. It would not be proper to disqualify a venire person on that basis alone. In *Willis*, the venireperson expanded on that limited reason and held to a subjective concern of inability to be fair. The venireperson's relationship to a police officer was not disassociated from the idea of giving credit to an officer's training. The trial court did not engage in the examination. Our review of the voir dire showed a prospective juror who, at best, "is uncertain and ambiguous in his answers or, at worst, is actually biased to such an extent that he would be unable to give the defendant a fair and impartial trial." *Id.* at 41. We held that the venireman was never rehabilitated. We there said with regard to venireman Tracy, he "was related to a law enforcement officer, and because of that relationship was 'apprehensive' about his ability to give the defendant a fair trial. Further, the credibility of the police officers who testified was the key issue in the case, thus making the failure to strike this venireman more significant." *Id.* at 41.

█ Consideration of each of the above cases compels the following conclusions. (1) Unequivocal statements of bias on issues such as the death penalty or an absolute expectation that an innocent defendant will testify require the trial court to strike a prospective juror. (2) After making equivocal answers on matters of credibility a prospective juror may be rehabilitated if the rehabilitation is responsive to the indications of partiality, providing there is a clear, unequivocal assurance that the juror would not be partial. (3) In reviewing for an abuse of discretion on a ruling an appellate court will determine whether the stated reason for the possibility of partiality remained relevant to the evidence and matters to be decided. (4) Where any question of partiality is raised, but not *directly* refuted by other answers and its application remains in the case in light of the evidence, then it is an abuse of discretion not to sustain a challenge for cause.

█ Applying the holdings of the Supreme Court discussed here and our own holding in *State v. Willis*, a retrial is indicated in the present case. Venirewoman Leigh candidly acknowledged her relationship to a former police officer, her inclination to believe a police officer, and she noted her husband's probable criticism if she disbelieved a police officer and found the defendant not guilty. She was not rehabilitated by any questions of the prosecutor or the court by some indication that she would attempt to apply an unknown and undefined standard to all witnesses. Not once did she "unequivocally state (she) could try the case impartially" nor did she indicate she would "try" to be impartial. Venirewoman Leigh honestly expressed apprehension that she would tend to believe police officers. The testimony of four police officers was crucial to the state's evidence.

Neither the examination of the prosecutor nor the examination of the trial court rehabilitated venireperson Leigh. She was never asked whether she could set aside her apprehensions if selected to try defendant. A promise to apply an unknown standard to the witnesses does not overcome an apprehension of partiality. Even if the standard had been described by reference to MAI–CR2d 2.01 it does not foreclose a venireperson from viewing the evidence and comparing conflicting testimony of witnesses while applying a partial point of view based on prior experience as a victim, a relationship to a former police officer, influence derived from respect for police officers, or sensitivity to an adverse reaction of a spouse in the event of a not guilty verdict.

The right to a fair trial is so basic and fundamental that a finding of guilt or innocence in a criminal trial should not be the frequent subject of attack on the ground

presented in this and a multitude of cases. The state and the defendant are entitled to enjoy confidence that the result is founded on the law and the evidence free of a question of partiality. All citizens have an interest in the integrity of the legal system. If a question of partiality remains after verdict, then everyone suffers and the rule of law is diminished.

We need not decide defendant's second claim of error. It is, however, without merit. Officer Robinson's testimony regarding an informant's tip which led to the arrest of defendant was not offered to prove that defendant committed the burglary. It was offered only to explain why the officer conducted a search in the area of the arrest. Testimony offered to explain a police officer's conduct is not considered hearsay. *State v. Pettit*, 719 S.W.2d 474, 476 (Mo.App.1986).

We reverse and remand for a new trial.

PUDLOWSKI, P.J., concurs.

CRANDALL dissents in separate opinion.

CRANDALL, Judge, dissenting.

I dissent. I agree that the prudent course of action would have been to sustain defendant's challenge for cause of Venireman Leigh. I disagree with the conclusion that the trial court committed reversible error.

The fact that Mrs. Leigh was a victim of an unsolved burglary is not raised by defendant as an issue on appeal and should not be used, *sua sponte*, to bolster the conclusion by the majority that the trial court erred.

The gravamen of this appeal is whether Mrs. Leigh, if chosen to be a juror, could properly evaluate the testimony of police officers. In response to questions by defense counsel, she initially demonstrated a predilection in favor of police officers that might have prevented her from considering their testimony fairly and impartially. The prosecutor, by his questioning, successfully rehabilitated her as a juror. The trial judge then made an independent examination of the venireman in order to satisfy himself of her ability to be fair and impartial. The trial judge had the opportunity to hear what she said and how she said it. We, as an appellate court, are limited to a review of a printed recordation of a past event.

My review of the record does not lead me to the conclusion that there was a "clear abuse of discretion and real probability of injury to the complaining party." For that reason I would affirm the defendant's conviction.