STATE of Missouri,
Plaintiff–Respondent,

v.

Steven SHANKS, Defendant–Appellant.

No. 58670.

Missouri Court of Appeals,
Eastern District,
Division One.

May 7, 1991.

Susan K. Roach, Andrew H. Marty, Chesterfield, for defendant-appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant was convicted of one count of attempted kidnapping, § 564.011, RSMo 1986, and one count of resisting arrest, § 575.150, RSMo 1986, in the Circuit Court of St. Louis County. Defendant was sentenced as a persistent offender to ten years imprisonment for the attempted kidnapping charge and six months imprisonment for the resisting arrest charge, the terms to run concurrently. This appeal follows.

Defendant contends first that the trial court erred in failing to find that defendant established a prima facie case of racial discrimination in the prosecution's use of its peremptory challenges under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The venire panel consisted of twenty-four people of which three were black. Defendant alleges that the prosecution improperly struck two black members of the venire, Freddy Jones and Mack Williams as part of its peremptory challenges.

■ Under *Batson,* a defendant must establish three allegations to formulate a prima facie case of racial discrimination in the use of peremptory challenges: (1) defendant must demonstrate he is a member of a cognizable racial group; (2) defendant must aver the prosecutor used peremptory challenges to remove prospective jurors of defendant's race; and (3) defendant must point out other relevant circumstances that raise an inference that the prosecutor used the peremptory challenges to exclude members of the venire panel because of their race. 476 U.S. at 96, 106 S.Ct. at 1723; *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987).

■ Once the defendant has established a prima facie case, the burden of production then shifts to the state to come forward with an "acceptable" neutral explanation for challenging black jurors. *Antwine,* 743 S.W.2d at 64, *citing Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, n. 7, 101 S.Ct. 1089, 1094, n. 7, 67 L.Ed.2d 207 (1981). This neutral explanation "must give a 'clear and reasonably specific' explanation of the state's 'legitimate reason' for exercising the challenges." *Batson,* 476 U.S. at 99, n. 20, 106 S.Ct. at 1724, n. 20, *citing Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096.[1] In

Missouri the trial judge must "consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges." *Antwine,* 743 S.W.2d at 64.

■ There were three black members of the venire and the prosecutor exercised two of his peremptory strikes on Freddy Jones and Mack Williams.[2] The defendant made a *Batson* objection to the strikes and the trial court then asked the prosecutor to explain the strikes in question. The trial court made no express findings in denying defendant's motion to place the two black veniremen back on the panel, but we have a sufficient record to determine if the trial court erred in "implicitly finding" that the prosecutor's explanations were: "(1) neutral, (2) related to the present case, (3) clear and reasonably specific, and (4) legitimate." *State v. Hall,* 785 S.W.2d 652, 655 (Mo. App.1990).

In explaining the striking of Freddy Jones, the prosecutor stated that he made eye contact with venireman Jones when the jury panel first came in and "[a]t the time I was conducting my voir dire, Mr. Jones kept staring at me as if he knew me. The name seemed familiar, but I couldn't place Mr. Jones." The prosecutor went on to explain that he prosecuted part-time in the evening in a municipality in North St. Louis County and venireman Jones was a resident of an adjacent municipality. The prosecutor further stated to the judge: "[a]nd for some reason I just had the feeling Mr. Jones knows me. And maybe I prosecuted him in Jennings, or some member of his family, I have had him in court there. And he just kept glaring at me. Not saying he gave me the evil eye; kept glaring at me. I couldn't seem to shake that. Every time

---

**1.** *"Batson* states unequivocally, however, that the State's 'explanation need not rise to the level of justifying exercise of a challenge for cause.' *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. And we believe that *Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate 'hunches' and past experience, so long as racial discrimination is not the motive." *State v. Antwine,* 743 S.W.2d 51, 65 (Mo. banc 1987).

**2.** The trial court took judicial notice that the defendant was black and that the state used two of its peremptory challenges to remove Freddy Jones and Mack Williams, both of whom are black. The trial court also took judicial notice that one black person, Doris Perkins, remained on the jury panel.

I went past that part of the jury, he was staring. Just for that reason I struck him."

If an acceptable neutral explanation is presented by the state and accepted by the trial court as it implicitly was in this case, the defendant then has the obligation to demonstrate that the state's explanation is merely pretextual and not the true reason for the use of the state's peremptory challenge. *Antwine*, 743 S.W.2d at 64; *Hall*, 785 S.W.2d at 656. A trial court's finding of discrimination, or a finding of no discrimination, is a finding of fact which shall not be set aside unless clearly erroneous. *Antwine*, 743 S.W.2d at 66. Defendant has failed to demonstrate that the state's explanation was pretextual or that the state's peremptory strikes were racially motivated and the trial court's decision on venireman Jones therefore must be affirmed, as it is not clearly erroneous.

■ The facts surrounding the peremptory challenge of venireman Mack Williams warrant our affirming the trial court's determination that there was no violation of *Batson*. The prosecutor based his removal of venireman Williams on his employment as a medical technician at the St. Louis Regional Hospital. The prosecutor stated that: "... friends and acquaintances of mine that are police officers that take people there [referring to St. Louis Regional Hospital] have had nothing but bad attitudes and negative experiences with medical personnel who deal with patients at St. Louis Regional Hospital."

Defendant drew the trial court's attention to three other white veniremen who were each employed in the medical field but were not struck by the prosecution. These veniremen consisted of two · registered nurses and one medical assistant but none of them were employed at St. Louis Regional Hospital. The trial court implicitly found that those three veniremen were not similarly situated to venireman Williams because they were not employed by St. Louis Regional Hospital and we will not disturb that finding.

The trial court's determination that the peremptory strikes of venireman Freddy Jones and venireman Mack Williams were not motivated by racial discrimination, is further supported by the fact that venireman Doris Perkins, a black woman, was not removed by one of the prosecution's peremptory strikes. Point denied.

Defendant's next point on appeal alleges that the trial court erred in denying the defendant's motion for a new trial or in the alternative, judgment of acquittal because the trial court failed to allow defense counsel to strike for cause venire member, Virgil Brothers [hereinafter Brothers], who expressed bias toward a policeman's testimony.

■ To qualify as a juror, a venireperson must be able to enter upon that service with an open mind, free from bias and prejudice. *State v. Wheat*, 775 S.W.2d 155, 158 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990). The trial court is in a unique position of being able to observe the intangibles of gesture, inflection and demeanor during the voir dire and therefore the court occupies the best position to determine the qualifications of a prospective juror. *State v. Lingar*, 726 S.W.2d 728, 734 (Mo. banc 1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). An appellate court will not disturb a trial court's ruling on a challenge for cause unless it constitutes a clear abuse of discretion and a real probability of injury to the complaining party. *Wheat*, at 158.

■ During the voir dire, the following exchange took place between Brothers and defense counsel:

DEFENSE COUNSEL: We haven't heard from you, sir.

VENIREPERSON BROTHERS: My uncle was a police officer for thirty years; he is deceased now.

DEFENSE COUNSEL: Now, how do you feel about that idea? Do you think a policeman could say something that is not true as well as anyone else?

VENIREPERSON BROTHERS: I think so, yes.

DEFENSE COUNSEL: You think because he is a policeman he is more apt to think the truth?

VENIREPERSON BROTHERS: I would probably lean toward that, yes.

DEFENSE COUNSEL: You would lean toward that.

At that point, defense counsel went on to another venire member and did not ask Brothers any more questions. Neither the prosecutor nor the trial court examined Brothers during voir dire. Defense counsel then moved that Brothers be struck for cause stating, "[b]asically, Mr. Brothers said he would lean towards a policeman's testimony." The trial court overruled defense counsel's motion.

Although Brothers stated that he would probably lean toward thinking that a policeman is more apt to "think the truth," Brothers also stated that he believed a policeman might also not tell the truth. Defendant cites this court to *State v. Edwards*, 740 S.W.2d 237 (Mo.App.1987), to support his allegation of bias. In *Edwards*, the voir dire examination of the venireperson Leigh was quite extensive and involved the defense counsel, prosecutor and trial judge. *Edwards*, at 241. Venireperson Leigh was married to a former police officer who still had friends in the police department; she admitted a tendency to believe police officers and she expressed a concern for criticism and discomfort at home if she did not have such a tendency to believe police officers. *Id.*

Here, there was no extensive voir dire examination of Brothers and we do not believe that defense counsel elicited, in his cursory questioning, a sufficient showing that Brothers would not hear the evidence fairly and impartially. Further, we do not believe that the trial court was required under these facts to make an independent inquiry during voir dire of Brothers because the exchange between defense counsel and Brothers did not bring into question the ability of Brothers to serve as an impartial and unbiased juror. Point denied.

Defendant's final point alleges that the trial court erred in denying defendant's motion for a new trial or in the alternative,

judgment of acquittal because the evidence was insufficient to support the conviction of resisting arrest.

The facts as adduced at trial and viewed in the light most favorable to the state show that Anthony Swinko [hereinafter Swinko] was standing in front of his residence in Berkeley, Missouri when he was approached by the defendant. The defendant, whose one hand was covered with a jacket stated: "I got a gun on you. If you yell I will shoot you. Now get in the car and start it." When Swinko did not immediately obey defendant's command, the defendant stated: "you do believe I will shoot you?" Swinko offered his keys and wallet to the defendant but the defendant struck Swinko's hands and repeated his threat: "you do believe I will shoot you?" Swinko then attempted to walk up his driveway but defendant blocked his way. Swinko turned around and walked into the street calling for help.

Harold Rose [hereinafter Rose], a neighbor, heard the shouting and walked out of his house. Rose walked over to where the defendant and Swinko were and he grabbed the defendant's arm which was covered by a jacket, determining that the defendant did not have a gun. An employee of Rose's, Randy Scaggs [hereinafter Scaggs] heard the shouting and walked out of Rose's house. Rose told Scaggs to call the police.

At that point, defendant ran away from Swinko and Rose. Scaggs and another employee of Rose chased the defendant to a garage several houses away where defendant tried to hide. Officer Jack Krugel, Jr. of the Berkeley Police Department [hereinafter Krugel] observed the chase and slowed down his patrol car. Krugel approached the garage where he saw the defendant enter. Scaggs and the other employee of Rose ran up to Krugel and told him that the defendant had a gun and that he had tried to kidnap Swinko. Krugel then ordered the defendant out of the garage. After a short delay, the defendant came out of the garage and Krugel placed defendant, who offered no resistance, un-

der arrest, put handcuffs on him and transported him to the Berkeley police station.

When Krugel arrived at the police station and assisted the defendant out of the patrol car, the defendant knocked Krugel off balance, jumped over a fence and ran away from the police station. Krugel radioed the police dispatcher and the defendant was apprehended shortly thereafter by two other officers on patrol in the area.

Resisting arrest as alleged by the prosecution has three elements: (1) knowledge that a law enforcement officer is making an arrest, (2) purpose on the part of the defendant to prevent the officer from effecting the arrest, and (3) resisting the arrest by fleeing from the arresting officer. § 575.150 RSMo 1986.

■ Although there is no Missouri authority on point, and we are without any legislative guidance, it is logical to require that for a valid conviction of resisting arrest pursuant to § 575.150 RSMo 1986, the arrest must be *in progress* when the "resistance" occurs. Once the arrest has been fully effectuated a defendant should be considered to be in custody.

■ The state contends that a full custodial arrest had not been effected upon the defendant until after he was apprehended following his flight from the police station house. Although there is no bright line rule for determining when a seizure of an individual escalates to the level of a full custodial arrest, the probable cause requirement for a warrantless arrest exists "... when the facts and circumstances within the knowledge of the arresting officers, and of which they have reasonably trustworthy information, or sufficient to warrant a belief by a person of reasonable caution that the person to be arrested has committed the crime for which he is being arrested." *State v. Sidebottom*, 753 S.W.2d 915, 923 (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988), *quoting State v. Griffin*, 640 S.W.2d 128, 131 (Mo.1982).

Krugel testified at trial that he placed the defendant under arrest at the time the defendant walked out of the garage. Kru-

gel further testified that he frisked the defendant and advised him of his rights soon thereafter when he put the defendant into the patrol car to transport him to the police station. Krugel's actions were based on his reasonable belief that the defendant had committed the crime of attempted kidnapping. We believe Krugel effectuated the arrest at the time he placed the defendant in his patrol car. We further believe that the prosecution did not properly charge the defendant with one count of resisting arrest violating § 575.150 RSMo 1986, because our reading of the statute requires that the arrest being resisted must not have been effectuated before the resistance occurs. We therefore reverse defendant's conviction on the charge of resisting arrest pursuant to § 575.150 RSMo 1986 and remand for entry of judgment consistent with this opinion.

Judgment is affirmed in part and reversed and remanded in part.

KAROHL and GRIMM, JJ., concur.