**STATE of Missouri, Respondent,**

v.

**Bradley E. ST. JOHN, Appellant.**

**No. WD 64890.**

Missouri Court of Appeals,
Western District.

March 28, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.

Susan L. Hogan, Appellate Defender, Kansas City, MO, for Appellant.

Before: BRECKENRIDGE, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Bradley E. St. John ("St.John") appeals from a conviction following a jury trial in the Circuit Court of Jackson County for one count of domestic assault in the first degree in violation of section 565.072.[1] St. John argues two points on appeal. In Point I, St. John argues that the trial court erred in sentencing him as a prior and persistent domestic violence offender to life imprisonment without probation or parole under section 565.063, because the prior convictions used to prove St. John was a prior and persistent domestic violence offender did not meet the statutory definition of "domestic assault offenses." In Point II, St. John argues the trial court abused its discretion when it overruled St. John's motion to strike venireperson Maria Murphy ("Murphy") for cause, because Murphy indicated that she would be unable to find St. John not guilty if defense counsel did nothing, even if the State failed to prove St. John guilty beyond a reasonable doubt. For the following reasons, the judgment of the trial court is reversed in part and affirmed in part.

## Background

St. John's girlfriend, Susan Craig, suffered a broken neck while St. John was the only other person in an apartment with

---

1. Statutory references are to Revised Statutes of Missouri, 2000.

her and later died of complications from the injury. St. John was charged by indictment with one count of domestic assault in the first degree in violation of section 565.072, or in the alternative, one count of murder in the second degree in violation of section 565.021. The State charged St. John as a prior and persistent offender, and as a prior and persistent domestic violence offender. In support of the prior and persistent domestic violence offender allegation, the State alleged that St. John had two prior felony convictions in Illinois for domestic battery. Prior to trial, the State admitted evidence of St. John's domestic battery convictions in Illinois over St. John's continuing objection, and found St. John to be a prior and persistent offender and a prior and persistent domestic violence offender.

During voir dire, the following exchange occurred between the prosecutor and Murphy:

[PROSECUTOR]: We will start right here with number 10, Ms. Murphy. You have taken criminal justice classes or you have a degree in criminal justice?

[MURPHY]: I have a degree.

[PROSECUTOR]: Basically I will ask this question. At the end of this case, just like the Judge did when we first start[ed] off she read the instructions that is [sic] the law of the State of Missouri. At the conclusion she's going to read more instructions and that's going to constitute the law in the State of Missouri that pertains to this case. My question is basically this: When she reads you those instructions on the law, if it conflicts with something you learned in criminal justice class would you be able to set aside what you learned and decide this case based solely upon what you hear as the Judge tells you the law is?

[MURPHY]: Yes.

Later, during voir dire, the following exchange occurred between St. John's defense counsel and Murphy:

[DEFENSE COUNSEL]: Is there anybody that feels they could not follow the law and hold off on making a decision until you have heard everything in this case? I see no hands.

This continues with what we were talking about just a minute ago. That it's your duty and you are asked to sit here and to presume that Mr. St. John is innocent and you are required to do that up until the case is given to you to deliberate on and only then could you make a decision. The reason that I bring that up and it's something that [the prosecutor] has touched on already is because in our system, the defendant always goes second. So just like today, I had to wait until [the prosecutor] was done with his questions before I could ask questions. It's like that all the way through from start to finish. My concern is that you are going to make a decision on this case before you have ever even heard our argument. So is there anybody here that feels that they could not follow that rule of law and continue with the presumption of innocence and not make a decision until the case is given to you as a juror for deliberation. I see no hands.

The next question that I have is, is there anybody here that feels like they would base their decision on this case simply on the number of witnesses that would be presented by one side or the other? I will let you think about that for a second and let me give you an example. If you are chosen as a juror, you sit here for trial and the State presented 10 witnesses and we only presented 2 witnesses. Is there anybody just based on the number of witnesses, would decide whether Mr. St. John is

guilty or innocent? I see no hands. Oh, I do.

[MURPHY]: I have a question.

[DEFENSE COUNSEL]: You are juror number 10?

[MURPHY]: Yes. Does that mean that you are doing it only on the number or I mean if you say you have 10 people up there saying that he did it and 2 people that are saying he didn't, obviously—

[DEFENSE COUNSEL]: Fair question, no, and let me be clear. I am just talking about the number of people, the number of people that are presented. If the State brought up 10 witnesses and they testified—I am not talking about what they testified to, just brought them up and say we didn't bring up any witnesses. Would you tend, would you want to vote guilty just because the State brought all the witnesses? I see no hands. And just to take this one step further. Is there anybody that feels like not only did we not present any witnesses, the State presented their witnesses, we didn't present any but then I also didn't ask a single question. Is there anybody here then that would make their decision as to whether Mr. St. John is guilty or innocent just based on that fact?

Murphy did not respond to this inquiry. After answering questions from other jurors, the following exchange took place:

[DEFENSE COUNSEL]: Yeah, the question is and just—I want to try to be clear for everybody. If we didn't bring any witnesses, the State brought all the witnesses and those witnesses testified and what they said, what they testified to or whatever the evidence was that the State brought. At the end of the day, the State didn't prove their case beyond a reasonable doubt, could you vote not guilty?

. . . .

[MURPHY]: I think that that would be a hard thing for anybody to do. If you didn't ask anybody, any of the witnesses questions, I personally would think you don't want to ask them questions because you don't want them, you don't want to give them a chance to bring something up that would not be admissible otherwise.

[DEFENSE COUNSEL]: All right. So if I hear you correctly then, what you are saying is even if what the State brought in as their evidence in your mind didn't prove beyond a reasonable doubt the case, the fact that I didn't ask any questions would lead you to believe that maybe there was something to hide?

[MURPHY]: Yes.

[DEFENSE COUNSEL]: And you would have trouble voting not guilty?

[MURPHY]: Yes.

Following this exchange, the defense counsel asked if any of the jurors were confused, and Murphy raised her hand. The following exchange then took place:

[DEFENSE COUNSEL]: Let me try one more time and then Ms. Murphy is going to try. I am certainly not trying to make light of this because this is very important. Mr. St. John sits here with his life in the balance.

[MURPHY]: Right.

[DEFENSE COUNSEL]: And the situation has become a little comical because I seem to be stammering over my words but the issue is not and here's the situation. The state of the law is that the State of Missouri, [the prosecutor], has to prove their case beyond a reasonable doubt, okay? And I am giving you a hypothetical to see if everybody feels like they can really apply that law, if they can really put the State to proving

their case beyond a reasonable doubt. The hypothetical is this. The State produces witnesses in the trial, the witnesses testify. I have no questions, I don't stand up one time. We don't present anybody as witnesses on our side of the case. And after you have listened to all the evidence, the evidence does not prove the case beyond a reasonable doubt, okay? That determination is being made for you in this hypothetical. Does not prove their case beyond a reasonable doubt. In that situation, is there anybody here who could not vote not guilty? Okay. Now, because it got confused and I am not seeing any hands now and based on our conversation earlier I would expect to have seen a few of them including Ms. Murphy?

[MURPHY]: I already raised my hand so—

The following exchange about Murphy between the defense counsel, the prosecutor and the trial judge took place out of the presence and hearing of the jury during the strikes for cause:

[DEFENSE COUNSEL]: I believe it was when we were discussing the burden of proof which we labored over for a while and I think I was very clear about it several times although a different juror disagreed with that but she finally did come around eventually when everybody came around, juror number 10's response did not change and that was that she would need to hear something from us and if she didn't, that that would weigh in her mind that we were trying to hide something from her.

THE COURT: She did say that and I want you to respond to it. My problem was they all had finally decided that you were going to be a really bad lawyer if you didn't ask any questions and I mean—and I understand where you are coming from but I do sit there and say I

have never heard you take the position that you are not going to ask questions. I mean, you know, you are going to a very theoretical extreme that makes me nervous in terms of the jury sitting there saying this guy's going to be a bad lawyer if he does that but I know where you are coming from and I want to hear from [the prosecutor] on that.

[PROSECUTOR]: Judge, I think that hits on it. [Defense counsel] may have thought he was very clear but I think the jurors response[s] were just exactly the opposite. I don't think he was very clear at all. I never thought he got an absolute commitment out of these folks that they could not vote, you know, not guilty if it was not proven beyond a reasonable doubt. And I think that's where the confusion came in and I don't know that they ever got there. So I would disagree that there was a definitive response on that.

[DEFENSE COUNSEL]: Just to respond Judge, I think we did and I think that at the end there was an agreement by everybody that they understood the hypothetical. Ms. Murphy on several occasions said that she still felt the same. It wasn't that I was going to be a bad lawyer, it was that if nothing was said and no questions were asked she felt like I'd be hiding something.

The trial court then denied St. John's motion to strike Murphy for cause, and Murphy sat on the jury and served as the foreperson. The trial court overruled St. John's motions for judgment of acquittal at the close of the State's case and at the close of all evidence. The case was submitted to the jury on the charge of domestic assault in the first degree. The jury found St. John guilty. The trial court overruled St. John's motion for a new trial and sentenced him to life in prison. This appeal follows.

## Point I

■ In Point I, St. John argues that the trial court erred in sentencing him as a prior and persistent domestic violence offender to life imprisonment without probation or parole under section 565.063, because the prior convictions used to prove St. John was a prior and persistent domestic violence offender did not meet the statutory definition of "domestic assault offenses."

■ "Statutory interpretation is a question of law, which this court reviews *de novo*." *State v. Gibson*, 122 S.W.3d 121, 126 (Mo.App. W.D.2003).

In support of Point I, St. John argues that the State failed both to plead and to prove the essential facts warranting a finding of prior and persistent domestic violence offender status. St. John claims that by definition, the prior convictions from Illinois are not and cannot be prior convictions, because section 565.063.1 plainly states that only convictions under sections 565.050, 565.060, 565.072, or 565.073 can be used to prove that a defendant is a prior and persistent domestic violence offender. St. John argues that the State could not prove that he was convicted of violating any of the specific statutes enumerated in section 565.063.1, and, therefore, the State could not prove that he was a prior and persistent domestic violence offender.

St. John argues that he has been prejudiced by the trial court's error in sentencing him as a prior and persistent domestic violence offender. St. John concedes that his sentence of life imprisonment was authorized by the circumstances of the case. St. John claims, however, that the trial court's erroneous application of persistent domestic violence offender status was clearly prejudicial, because he must serve his life sentence without probation or parole.

Section 565.063.1(1) defines a "domestic assault offense" as:

(a) The commission of the crime of domestic assault in the first degree pursuant to section 565.072 or domestic assault in the second degree pursuant to section 565.073; or

(b) The commission of the crime of assault in the first degree pursuant to the provisions of section 565.050 or assault in the second degree pursuant to the provisions of section 565.060, if the victim of the assault was a family or household member[.]

Section 565.063.1(3) provides that a "persistent domestic violence offender" is:

[a] person who has pleaded guilty to or had been found guilty of two or more *domestic assault offenses*, where such two or more offenses occurred within ten years of the occurrence of the *domestic assault offense* for which the person is charged[.]

(Emphasis added.)

Section 565.063.1(4) provides that a "prior domestic violence offender" is:

[a] person who had pleaded guilty to or has been found guilty of one *domestic assault offense*, where such prior offense occurred within five years of the occurrence of the *domestic assault offense* for which the person is charged.

(Emphasis added.)

Section 565.063.14 provides that:

Any person who has pleaded guilty to or been found guilty of a violation of section 565.072 shall be sentenced to the authorized term of imprisonment for a class A felony if the court finds the offender is a prior domestic violence offender. The offender shall be sentenced to the authorized term of imprisonment for a class A felony *which term shall be served without probation or parole* if the

court finds the offender is a persistent domestic violence offender or the prior domestic violence offender inflicts serious physical injury on the victim.

(Emphasis added.)

Section 565.072.2 provides that:

Domestic assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

■ "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning." *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 251 (Mo. banc 2003).[2] "[W]here statutory language is clear, unambiguous, and admits of only one meaning, there is no room for construction and the legislature is presumed to have intended what the statute says." *Corvera Abatement Techs., Inc. v. Air Conservation Comm'n*, 973 S.W.2d 851, 858 (Mo.banc 1998).

In the instant case, the plain language of section 565.063.1(3) defines prior and persistent domestic violence offenders as people who have committed *domestic assault offenses*. Likewise, the plain language of section 565.063.1(1) limits the definition of *domestic assault offense* to four different crimes under Missouri law. The statute does not mention any domestic violence crimes from other states, so the legislature is presumed to have intended to limit the definition of *domestic assault offense* to Missouri crimes. Therefore, the trial court erred in sentencing St. John as a prior and persistent domestic violence of-

2. Overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 224

fender to life imprisonment without the possibility of probation or parole.

Point I is granted. We reverse St. John's sentence and remand for re-sentencing.

## Point II

■ In Point II, St. John argues the trial court abused its discretion when it overruled St. John's motion to strike venireperson Murphy for cause, because Murphy indicated that she would be unable to find St. John not guilty if defense counsel did nothing, even if the State failed to prove St. John guilty beyond a reasonable doubt.

■ "[R]eview of a trial court ruling on a motion to strike for cause is limited to whether there was an abuse of discretion, that is, whether the ruling is clearly against the weight of the evidence and contrary to logic." *State v. Ringo*, 30 S.W.3d 811, 816 (Mo.banc 2000). "An appellate court will find reversible error [in the conduct of voir dire] only when an abuse of discretion is found and the defendant can demonstrate prejudice." *State v. Oates*, 12 S.W.3d 307, 311 (Mo.banc 2000).

St. John argues that Murphy could not be an unbiased juror. St. John claims that Murphy indicated that she would not hold the State to its burden of proof if the defense asked no questions, even if the State did not establish St. John's guilt beyond a reasonable doubt. St. John also claims that Murphy indicated that if no questions were asked, Murphy would speculate as to why and also said that she would think the defense was hiding something if defense counsel did nothing. St. John further claims that Murphy indicated that if defense counsel did not ask any

(Mo.banc 2003).

questions, she would have trouble voting not guilty, even if the State had not proved its case.

St. John argues that despite being an unqualified juror, Murphy served as the foreperson of St. John's jury. St. John concludes that the trial court abused its discretion when it denied his motion to strike Murphy for cause, and that this error violated St. John's right to a fair trial, which warrants a reversal of his conviction and sentence and award of a new trial.

"The qualifications of a prospective juror are not determined conclusively by focusing on a single response, but are considered in the context of the entire examination." *Middleton v. State,* 103 S.W.3d 726, 734 (Mo.banc 2003). "If consideration of the entire examination convinces the judge that the juror can be fair and impartial, then the judge is not required to disqualify the juror merely because, considered alone, some parts of the juror's responses raise the bare possibility of prejudice." *Ham v. State,* 7 S.W.3d 433, 441–42 (Mo.App.1999). If a defendant desires to challenge prospective jurors for cause, he or she has "a duty to follow up with questioning which would reveal that the venirepersons could not decide the case impartially." *State v. Moore,* 927 S.W.2d 439, 441 (Mo.App.1996). "Where defense counsel fails to follow up further on questions he alleges show bias, but which can reasonably be interpreted differently, it is not error for the trial court to deny the challenge for cause." *Ham,* 7 S.W.3d at 446.

*State v. Griffin,* 756 S.W.2d 475, 481 (Mo.banc 1988), provides that:

[A] juror who expresses a personal opinion that a defendant should testify or present some evidence in his own behalf is not necessarily disqualified as a juror. If it appears reasonable to the trial court that the venireperson's opinion will yield and that he will determine the issues under the law, the venireperson is not subject to being excused for cause.

*State v. Leisure,* 796 S.W.2d 875, 880 (Mo.banc 1990), affirmed the trial court's denial of the defendant's motion to strike for cause a prospective juror that stated she would have a problem if the defendant did not testify, but also affirmed that she could "follow the law on this matter." *State v. Gregory,* 630 S.W.2d 607, 609 (Mo. App.1982), affirmed the trial court's denial of the defendant's motion to strike a juror for cause where the juror expressed an opinion that the defendant had a duty to put on witnesses. *Gregory* held that the prospective juror expressing this opinion was not an indication that the juror would be unable to follow the court's instructions that the defendant was not required to present any evidence. *Id.*

In the instant case, Murphy did, at one point, state that she would have trouble voting not guilty if defense counsel did not ask any questions. However, taken as a whole, Murphy's voir dire testimony did not indicate that she would be unable to be fair and impartial. Murphy answered "yes" when asked by the prosecutor if she would be able to set aside what she learned in criminal justice class and "decide this case based solely upon what you hear as the Judge tells you the law is." Murphy did not raise her hand when asked if she felt she "could not follow that rule of law and continue with the presumption of innocence and not make a decision until the case is given to you as a juror for deliberation." Although Murphy began to ask a question when defense counsel asked whether the State presenting more witnesses than the defense would cause anyone to decide whether St. John was guilty or innocent, defense counsel interrupted

Murphy. Defense counsel then asked if anyone would decide St. John's guilt or innocence based on the fact that the defense did not present any of his own witnesses or cross-examine any of the State's witnesses. Murphy initially did not respond to this inquiry. Later, Murphy stated she thought that if a defendant did not present any of its own witnesses or cross-examine any of the State's witnesses, either the defense counsel did not want the defendant to testify to something that was otherwise inadmissible or the defendant had "something to hide." After Murphy stated that she would have trouble voting not guilty in the aforementioned situation, defense counsel described the situation again and asked if anybody would have trouble voting not guilty. At this point, Murphy did not raise her hand. When defense counsel questioned Murphy about not raising her hand, Murphy replied "I already raised my hand so—."

Throughout most of her examination, Murphy indicated that she would be able to follow the law and be a fair and impartial juror. Although Murphy indicated at one point that she would have trouble voting not guilty, we must consider those comments in the context of the entire examination. The instant case is on point with *Leisure* and *Gregory*. Although Murphy expressed concerns about the defense counsel not asking any questions, she also said she would be able to follow the law. Furthermore, after Murphy gave an ambiguous final answer to defense counsel's question that could reasonably be interpreted differently, defense counsel failed to follow up with further questions to show allegations of bias.

The trial court's careful attention and consideration of the issue in this case is evident from the record. Because of the trial court's opportunity to observe voir dire first-hand, considerable deference is given to its evaluation of a veniremember's qualifications. *Ham*, 7 S.W.3d at 441. Drawing on its observations, the trial court noted that "they all had finally decided that you were going to be a really bad lawyer if you didn't ask any questions," which the trial court deemed to be "a very theoretical extreme." It was in this context the trial court concluded that Murphy was troubled by the prospect of the defense counsel not asking any questions, but that she never indicated that she could not be fair and impartial. We find that the trial court did not abuse its discretion by denying St. John's motion to strike Murphy from the jury for cause.

St. John cites *State v. Edwards*, 740 S.W.2d 237, 243 (Mo.App.1987), which held that the trial court erred in denying the defendant's motion to strike a juror for cause and remanded for a new trial. During voir dire, the juror in *Edwards* admitted her tendency to believe police officers, the fact that her husband was a former police officer, and that she "expected criticism from her husband if she voted innocence where a police officer testified." *Id.* at 240–41. The juror also "acknowledged that she would be less comfortable in voting a not guilty verdict, as opposed to a guilty verdict, if a police officer testified on facts indicating guilt." *Id.* at 240. Although the prosecutor and the trial court both attempted to rehabilitate this juror, the Eastern District still found that the trial court erred in denying the defendant's motion to strike this juror for cause. *Id.* at 243.

St. John also cites *State v. Gary*, 822 S.W.2d 448, 449 (Mo.App.1991), which also held that the trial court erred in denying the defendant's motion to strike a juror for cause and remanded for a new trial. The victim in *Gary* was a police officer who died in an automobile accident following a high-speed chase with the defendant. *Id.* at 449–50. The juror in *Gary* was a for-

mer police officer with the same police department as the victim. *Id.* at 452. The juror also had two brothers who were police officers and had friends in the police department. *Id.* In addition, the juror worked for several years with one of the police officers who testified for the State and knew other State witnesses who "testified to critical facts of the case." *Id.* Furthermore, seven of the ten State witnesses were law enforcement officers and the juror indicated a prejudice in favor of police officers during voir dire and that he was more inclined to believe police officers. *Id.*

The instant case is clearly distinguishable from *Edwards* and *Gary.* The jurors in *Edwards* and *Gary* both indicated a strong bias in favor of police officers testifying for the State as a result of their personal and professional relationships. By contrast, Murphy never indicated any sort of bias in favor of police officers or any other prosecution witnesses. Furthermore, the jurors in *Edwards* and *Gary* made numerous statements during voir dire indicating that they could not be fair and impartial jurors, but Murphy only made one isolated comment that was a cause for concern while otherwise indicating that she could be a fair and impartial juror.

Point II is denied.

## Conclusion

For the foregoing reasons, we affirm St. John's conviction for domestic assault in the first degree and we remand for resentencing not inconsistent with this opinion.

BRECKENRIDGE, P.J., and HOLLIGER, J., concur.